UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDRO BALDERAS, Individually and On Behalf of All Others Similarly Situated,<br><br>                                  Plaintiff,<br><br>              v.<br><br>360 DIGITECH, INC., HAISHENG WU, JIANG WU, and ZUOLI XU,<br><br>                                  Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Pedro Balderas ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding 360 DigiTech, Inc. ("360 DigiTech" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.       This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired 360 DigiTech securities between April 30, 2020 and July 7, 2021, both dates inclusive (the "Class Period"), seeking to

recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     360 DigiTech, through its subsidiaries, operates a digital consumer finance platform under the 360 Jietiao brand in the People's Republic of China ("PRC"). Its platform provides online consumer finance products to the borrowers funded by institutional funding partners. The Company also provides incremental credit assessment, collection, and other services, as well as guarantee for defaulted loans. The Company was formerly known as 360 Finance, Inc. and changed its name to 360 DigiTech, Inc. in September 2020.

3.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had been collecting personal information in violation of relevant PRC laws and regulations; (ii) accordingly, 360 DigiTech was exposed to an increased risk of regulatory scrutiny and/or enforcement action; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.     On July 8, 2021, reports circulated on social media to the effect that the Company's core product, the 360 IOU app, had been removed from major app stores. The reports came on the heels of the removal of other companies' apps as Chinese regulators investigated their customer data protection practices.

5.     On this news, 360 DigiTech's stock price fell $7.12 per share, or 21.48%, to close at $26.02 per share on July 8, 2021.

6.      Then, on July 9, 2021, *Seeking Alpha* reported that 360 DigiTech confirmed the removal of its 360 IOU app from the Android app store and quoted a Company spokesperson, who disclosed that the Company had "submitted a new rectification plan and stepped up the whole process."

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to 360 DigiTech's most recent Annual Report, as of December 31, 2020, there were 304,453,780 of the Company's ordinary shares outstanding.   360 DigiTech's securities trade on the Nasdaq Global Select market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in 360 DigiTech's securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired 360 DigiTech securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant 360 DigiTech is a Cayman Islands corporation with principal executive offices located at 7/F Lujiazui Finance Plaza, No. 1217, Dongfang Road, Pudong New Area, Shanghai 200122, PRC.  The Company's common shares trade in an efficient market on the NASDAQ under the ticker symbol "QFIN".

14.     Defendant Haisheng Wu ("H. Wu") has served as 360 DigiTech's Chief Executive Officer and as a Director at all relevant times.

15.     Defendant Jiang Wu ("J. Wu") served as 360 DigiTech's Chief Financial Officer from prior to the start of the Class Period until September 2020, and has served as 360 DigiTech's Chief Strategy Officer since September 2020.

16.     Defendant Zuoli Xu ("Xu") has served as 360 DigiTech's Chief Financial Officer since September 2020.

17.     Defendants H. Wu, J. Wu, and Xu are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of 360 DigiTech's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of 360 DigiTech's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and

opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions

with 360 DigiTech, and their access to material information available to them but not to the public,

the Individual Defendants knew that the adverse facts specified herein had not been disclosed to

and were being concealed from the public, and that the positive representations being made were

then materially false and misleading.  The Individual Defendants are liable for the false statements

and omissions pleaded herein.

19.     360 DigiTech and the Individual Defendants are collectively referred to herein as

"Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     360 DigiTech, through its subsidiaries, operates a digital consumer finance

platform under the 360 Jietiao brand in the PRC.  Its platform provides online consumer finance

products to the borrowers funded by institutional funding partners.  The Company also provides

incremental credit assessment, collection, and other services, as well as guarantee for defaulted

loans.  The Company was formerly known as 360 Finance, Inc. and changed its name to 360

DigiTech, Inc. in September 2020.

### Materially False and Misleading Statements Issued During the Class Period

21.     The Class Period begins on April 30, 2020, when 360 DigiTech filed an Annual

Report on Form 20-F with the SEC, reporting the Company's financial and operating results for

the year ended December 31, 2019 (the "2019 20-F").  The 2019 20-F stated, in relevant part:

*Privacy protection*

> We are dedicated to privacy protection of our borrowers during our risk
> management process, and we adopt policies to make sure we always obtain users'
> consent for our use of data and enquire from other sources of their information. We
> also obtain consent from our borrowers to use the data collected by 360 Group for

risk management purposes at the registration stage. All 360 Group's data we relied on for risk management purposes is provided on a machine-readable-only basis, without subject to any human review or intervention. We can only access the output of such credit analysis to eliminate the possibility of data leakage or unnecessary privacy invasion as much as possible. We also rely on our technologies and internal policies to prevent our systems from being infiltrated or exploited maliciously for data theft purpose.

Furthermore, in line with our commitment to protection of borrowers' privacy, we do not leverage 360 Group's rich and proprietary user data by gaining direct access to such user data. Instead, we offer 360 Group our artificial intelligence and other advanced data tools to enable it to develop algorithms that can translate complex user data into insights relating to a user's financial status and creditworthiness. In return, 360 Group provides us with access to such insights by allowing us to conduct query searches for credit analysis and risk management purposes. In this way, we capitalize on 360 Group's valuable user data set but avoid unnecessary privacy invasion.

22.     Further, in discussing the relevant PRC information security and privacy protection laws, the 2019 20-F stated, in relevant part:

In providing our online consumer finance service, we collect certain personal information from our consumers, and also need to share the information with our institutional funding partners for the purpose of facilitating credit to our consumers, as borrowers. We have obtained consent from borrowers for us to collect, use and share their personal information, and have also established information security systems to protect the user information and to abide by other network security requirements under such laws and regulations. However, there is uncertainty as to the interpretation and application of such laws which may be interpreted and applied in a manner inconsistent with our current policies and practices or require changes to the features of our system. Any non-compliance or perceived non-compliance with these laws, regulations or policies may lead to warnings, fines, investigations, lawsuits, confiscation of illegal gains, revocation of licenses, cancellation of filings, closedown of websites or even criminal liabilities against us by government agencies or other individuals.

This statement was plainly a catch-call provision not sufficiently tailored to meet the known and/or foreseeable risks facing the Company.

23.     In addition, in discussing the Company's "board practices," the 2019 20-F stated, in relevant part:

*Audit Committee*.   Our audit committee consists of Yongjin Fu, Gang Xiao and Andrew Y Yan. Yongjin Fu is the chairman of our audit committee. We have determined that Gang Xiao, Yongjin Fu and Andrew Y Yan satisfy the "independence" requirements of Rule 5605(c)(2) of the Nasdaq Stock Market Rules and Rule 10A-3 under the Exchange Act. We have determined that Yongjin Fu qualifies as an "audit committee financial expert." The audit committee oversees our accounting and financial reporting processes and the audits of the financial statements of our company. The audit committee is responsible for, among other things:

*** 

- monitoring compliance with our code of business conduct and ethics, including reviewing the adequacy and effectiveness of our procedures to ensure proper compliance.

***

*Nominating and Corporate Governance Committee*.   Our nominating and corporate governance committee consists of Hongyi Zhou, Andrew Y Yan and Wei Liu. Hongyi Zhou is the chairperson of our nominating and corporate governance committee. Andrew Y Yan satisfies the "independence" requirements of Rule 5605(a)(2) of the Nasdaq Stock Market Rules. The nominating and corporate governance committee assists the board of directors in selecting individuals qualified to become our directors and in determining the composition of the board and its committees. The nominating and corporate governance committee is responsible for, among other things:

***

- advising the board periodically with regards to significant developments in the law and practice of corporate governance as well as our compliance with applicable laws and regulations, and making recommendations to the board on all matters of corporate governance and on any remedial action to be taken.

24.    Appended to the 2019 20-F as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants H. Wu and J. Wu, attesting that "[t]he information contained in the [2019 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.     On May 28, 2020, 360 DigiTech issued a press release announcing the Company's

Q1 2020 unaudited financial results.  The press release stated, in relevant part:

> Mr. Haisheng Wu, Chief Executive Officer and Director of 360 Finance, commented, "The first quarter of 2020 was an unusual quarter, as the entire fintech industry essentially went through a COVID-19-induced extreme stress test in terms of business performance and asset quality. Our results for the quarter demonstrate that we successfully passed this test with flying colors, ***while maintaining high standards in compliance*** and a prudent risk management strategy. We attribute this success to our high-quality borrower base and the cautious operation approach. Furthermore, we attained remarkable progress in every aspect of our business operation despite challenging market conditions. Loan origination volume reached RMB51.8 billion during the quarter, a 25.6% year-over-year increase. Despite the unfavorable market conditions in the first quarter, we endeavored to sustain a considerable loan origination volume with decent risk profile compared to last quarter in 2019. During the quarter, the total revenue reached RMB3.18 billion. Free cash flow increased substantially as well which will provide additional cushion for risk management and further uphold our strong risk resilience."
>
> ***
>
> "As the pandemic subsides in China, we have seen D1 delinquency and collection rate improved to normal level. Up to present, D1 delinquency rate*9 fell to the level which is roughly the same as 6.77% in the fourth quarter of 2019, compared to roughly 7.28% in the first quarter of 2020. M1 collection rate*10 is gaining momentum and improved to above 86.0% to date. At the same time, asset quality proved resilient having effectively withstood the pandemic challenges. ***The consumer finance ecosystem empowered by our technology platform started to take shape and has played a pivotal role in improving customer retention rate, optimizing risk models and strengthening the collection of customer behavior data with adequate customer authorization***."

(Emphasis added.)

26.     That same day, 360 DigiTech hosted an earnings call with investors and analysts to

discuss the Company's Q1 2020 results (the "Q1 2020 Earnings Call").  During the scripted portion

of the Q1 2020 Earnings Call, Defendant H. Wu stated, in relevant part:

> In terms of compliance, as a leading fintech platform in China, we have always adhered to the highest standard in compliance. Together with BAT, JD, Lufax and other platforms, we were among the first batch of companies to receive approval to file our mobile finance app with the National Internet Finance Association of China. Among those on the list, for the mobile app, we were one of the few platforms that

is neither a financial institution nor a payment company. Moreover, our 360 Jietiao app has received a Level 3 testing certificate from China's National Computer Virus Emergency Response Center, the highest level issued by the institution. In particular, our app, received a Level 3 rating for both privacy policy and data security.

27.     On June 2, 2020, 360 DigiTech issued a press release entitled "360 Finance Receives App Security and Information Security Certifications from China's CVERC."  The press release stated, in relevant part:

> [360 DigiTech] today announced that its fintech services application, 360 Jietiao, has received both the App Security Certification and the App Information Security Certification from China's National Computer Virus Emergency Response Center ("CVERC"). Specifically, 360 Jietiao received a level 3 rating for both app privacy and data security, the highest level granted by the agency. CVERC is the official agency for anti-virus internet security and designated testing body for the "Special Crackdown on the Illegal Collection and Misuse of Personal Information by Apps" initiative by China's Ministry of Public Security.

> 360 Finance has placed the upmost importance on protecting user information and data since its establishment and is widely recognized for its cyber security capabilities which are part of its core DNA. 360 Jietiao incorporates a comprehensive security system for user privacy protection leveraging artificial intelligence to eliminate non-essential human intervention and enable staff authorized access and external supplier management. In addition, 360 Finance set up a Privacy Protection and Secure Computing Institute in 2019. The Institute conducts research on data privacy protection using cutting-edge technologies including federated learning, a machine learning technique that trains an algorithm across multiple decentralized edge devices or servers without exchanging local data samples.

> In recent years, personal data security has been increasingly scrutinized by national regulatory bodies in China. Since 2019, Chinese authorities have cracked down on illegal collection and misuse of personal information by internet-related companies. As a result, hundreds of app operators have been fined, issued rectification orders, or warned for their lack of privacy protections and failure to explicitly outline the scope of personal information use or excessive data collection in their apps, among other practices. Given the ongoing regulatory environment, the certifications granted to 360 Finance recognize the Company's core competency in data privacy and security technology and further consolidate the Company's competitive advantage in terms of regulatory compliance.

> Mr. Haisheng Wu, Chief Executive Officer and Director of 360 Finance, commented, "We are pleased to receive the certifications for app security and app

information security from CVERC. This is a formal acknowledgement from the top nationwide certification body of our commitment to maintaining the highest standards for data security and privacy protection when developing apps. Going forward, we will continue to invest in privacy protection while leveraging cooperation with our external ecosystem partners to collaboratively establish a secure and reliable environment for personal data protection."

28.    On June 3, 2020, 360 DigiTech issued a press release entitled, "360 Finance Among First Wave of Companies to Register its Financial Services App with China's NIFA."  The press release stated, in relevant part:

[360 DigiTech] today announced that its mobile application "360 Jietiao" was among the first batch of financial services apps from 33 companies to complete registration and file records with the National Internet Finance Association of China ("NIFA"), the national self-regulatory body for China's internet finance industry backed by People's Bank of China (PBOC).

360 Finance was one of the first companies to submit registration documents and receive a "FinTech Product Certification", a key credential needed for app registrations launched by the PBOC, as Chinese regulators tighten scrutiny of mobile apps operated by financial institutions amid growing public concern over personal data collection.

As a financial services app with an extensive user base, 360 Jietiao capitalizes on the expertise gained through Qihoo 360's decades of technology development in the internet security sector. 360 Finance has established a strict code of conduct within its privacy policy to protect systems against data theft. The Company has adopted an AI-driven protocol that effectively safeguards personal information from any human intervention.

Mr. Haisheng Wu, Chief Executive Officer and Director of 360 Finance, commented, "Regulators are cracking down in order to further protect consumers and have put in place a series of rules to strengthen personal data protection. As a company with strong cyber security capabilities in our DNA, 360 Finance places a high priority on providing robust data privacy protections and will never collect data without users' consent. We have a strict code of conduct that guides our business operations and employee behaviors and we have a technology-driven infrastructure in place that secures our systems. We will spare no effort in safeguarding personal information."

PBOC issued the notice on the promulgation of financial industry standards and the enhancement of mobile app security in September 2019, and designated NIFA to carry out the registration process. NIFA has required traditional financial institutions and fintech companies to submit self-inspection reports on their

financial services apps and approved a list of apps which are in full compliance
with the law. Industrial and Commercial Bank of China, China Construction Bank
and Ant Financial are also among the first companies to complete the registration
and receive a certification.

29.     On August 23, 2020, 360 DigiTech issued a press release announcing the

Company's Q2 2020 unaudited financial results.  The press release stated, in relevant part:

> On the regulation front, the official release of the "Interim Measures for
> Administration of Internet Loans Issued by Commercial Banks" by the China
> Banking and Insurance Regulatory Commission in July effectively validated our
> business model and cleared a major overhang to the industry. The recently
> announced "Guidelines on Laws Applicable to Trials of Private Lending Cases" by
> the Supreme People's Court of China set the new court protected interest rate cap
> for private lending. Although our business is almost entirely dealing with
> institutional lending, we believe this new guideline is consistent with our view that
> the overall interest rate in China will gradually trend lower in the intermediate term
> and our business planning has been largely based on that assumption. We are
> confident that we should be able to make timely adjustment to our operations to
> comply with updating regulatory environment while maintaining strong business
> momentum and pursuing our long-term strategic goals.[]

30.     On August 24, 2020, 360 DigiTech hosted an earnings call with investors and

analysts to discuss the Company's Q2 2020 results (the "Q2 2020 Earnings Call").  During the

scripted portion of the Q2 2020 Earnings Call, Defendant H. Wu stated, in relevant part:

> We believe we have built a structural advantage over our peers, which enables us
> to successfully navigate through previous market uncertainties, such as the P2P
> crackdown, the regulatory changes, and the pandemic. In each of those cases, we
> further strengthened our leadership position. With macro environment economy
> recovery, we see continued improvement in our operational metrics and we feel
> confident in our future prospects.

31.     On November 19, 2020, 360 DigiTech issued a press release announcing the

Company's Q3 2020 unaudited financial results.  The press release stated, in relevant part:

> It has been a quite busy period over last few months on the regulation front. In July,
> the official release of the "Interim Measures for Administration of Internet Loans
> Issued by Commercial Banks" by the CBIRC clearly validated our business model
> and provided detailed guidelines for the industry. In August, the Supreme People's
> Court of China issued "Guidelines on Laws Applicable to Trials of Private Lending
> Cases" setting a series of rules for private lending, including an interest rate cap. In

early November, the CBIRC issued a draft version of "Interim Administrative Measures for Online Micro-credit Business" aiming to cap leverage ratios in micro lending and joint-lending activities. We believe this new set of rules are consistent with the regulators' effort in recent years to deleverage the financial system and mitigate potential systematic risk. We have marginal exposure in micro lending and joint-lending. Also in November, the CBIRC issued "Notice on Promoting the Sustainable Development Capability of Consumer Finance and Auto Finance Companies and Improving Quality and Efficiency of Financial Services", which clearly set out specific practices for the cooperation between consumer finance companies and loan facilitation platforms. Such regulatory changes appeared favoring leading platform with strong risk management and regulatory compliance capability. We see opportunities to expand the service scope and depth of our data driven technology empowered digital platform to reach our long-term strategic goals.[]

32.     That same day, 360 DigiTech hosted an earnings call with investors and analysts to discuss the Company's Q3 2020 results (the "Q3 2020 Earnings Call").  During the scripted portion of the Q3 2020 Earnings Call, Defendant H. Wu stated, in relevant part:

It has been a very busy quarter in terms of regulatory change, which would create significant challenges for the Fintech industry. Since the beginning of the year when COVID-19 hit, we have now successfully navigated through three quarters under tremendous market uncertainties and the volatility, with consistent execution and steadily improving results. This is a strong testament to the soundness of our strategies and the sustainability of our business. In the wake of the pandemic and the regulatory challenges, we believe the Fintech industry has become further polarized as companies with core competitive edge continue to strive with consistent performance across business cycles.

***

As a leading Fintech player, we have always ensured that we maintain the highest standard of compliance in line with the latest regulations. This is critical for healthy and sustainable development of our business. Since the middle of this year, the regulators have rolled out a series of policies and guidance closely associated with the development of Fintech industry. Overall, we believe the regulators are promoting industry orders for healthy and sustainable development.

33.     On March 15, 2021, 360 DigiTech issued a press release announcing the Company's Q4 and full year 2020 unaudited financial results.  The press release stated, in relevant part:

12

2020 was marked by intense regulatory activities and we view such changes as long term positive to the industry and to our operations. Overall, we believe these new rules offer regulatory clarity for the industry and should benefit industry leaders with strong risk management capability and solid execution track record. We also note that some of the recent regulatory changes set more favorable environment for the industry. For example, the Supreme Court's ruling in late December essentially exempted institution lending from the 4xLPR rate cap, which lifted a major overhang to the industry. We intend to seize the opportunities to continue expanding the service scope and depth of our data driven technology empowered digital platform to reach our long-term strategic goals.[]

34.     That same day, 360 DigiTech hosted an earnings call with investors and analysts to discuss the Company's Q4 2020 results (the "Q4 2020 Earnings Call").  During the scripted portion of the Q4 2020 Earnings Call, Defendant H. Wu stated, in relevant part:

On the regulatory front, we believe that the regulations brought out recently either has minimal impact to our business, or in some cases, even created favorable environment for top platforms like us. As you may already know, the new ruling from the Supreme People's Court removed the more restrictive lending rate cap for our business. The new guideline on drug lending and micro-lending has a minimal impact on our business as our exposure to both is quite marginal. On the other hand, China's antitrust and deleveraging push may squeeze some market share away from the industry giants, which will bring us spill over market opportunities.

35.     On April 21, 2021, 360 DigiTech filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 20-F").  The 2020 20-F stated, in relevant part:

***Privacy protection***

We are dedicated to privacy protection of our borrowers during our risk management process, and we adopt policies to make sure we always obtain users' consent for our use of their data and enquires made to other sources of their information. We also obtain consent from our borrowers to use the data collected by 360 Group for risk management purposes at the registration stage. All 360 Group's data we relied on for risk management purposes is provided on a machine-readable-only basis, without subject to any human review or intervention. We can only access the output of such credit analysis to eliminate the possibility of data leakage or unnecessary privacy invasion as much as possible. We also rely on our technologies and internal policies to prevent our systems from being infiltrated or exploited maliciously for data theft purposes.

Furthermore, in line with our commitment to protection of borrowers' privacy, we do not leverage 360 Group's rich and proprietary user data by gaining direct access to such user data. Instead, we offer 360 Group our artificial intelligence and other advanced data tools to enable it to develop algorithms that can translate complex user data into insights relating to a user's financial status and creditworthiness. In return, 360 Group provides us with access to such insights by allowing us to conduct query searches for credit analysis and risk management purposes. In this way, we capitalize on 360 Group's valuable user data set but avoid unnecessary privacy invasion.

In June 2020, our fintech service application, 360 Jietiao, received both the app security certification and the app information security certification from the National Computer Virus Emergency Response Center, or the NCVERC, which is the official agency for anti-virus internet security and designated testing body for the "Special Crackdown on the Illegal Collection and Misuse of Personal Information by Apps" initiative by China's Ministry of Public Security. In particular, 360 Jietiao received a level 3 rating for both app privacy and data security, the highest level granted by the NCVERC. Given the ongoing regulatory environment, the certifications granted to us recognizes our core competency in privacy protection and security technology and further consolidate our competitive advantage in terms of regulatory compliance.

36.      Further, in discussing the relevant PRC information security and privacy protection laws, the 2020 20-F stated, in relevant part:

In providing our online consumer finance service, we collect certain personal information from our consumers, and also need to share the information with our institutional funding partners for the purpose of facilitating credit to our consumers, as borrowers. We have obtained consent from borrowers for us to collect, use and share their personal information, and have also established information security systems to protect the user information and to abide by other network security requirements under such laws and regulations. However, there is uncertainty as to the interpretation and application of such laws which may be interpreted and applied in a manner inconsistent with our current policies and practices or require changes to the features of our system. Any non-compliance or perceived non-compliance with these laws, regulations or policies may lead to warnings, fines, investigations, lawsuits, confiscation of illegal gains, revocation of licenses, cancellation of filings, closedown of websites or even criminal liabilities against us by government agencies or other individuals.

This statement was plainly a catch-call provision not sufficiently tailored to meet the known and/or foreseeable risks facing the Company.

37.     In addition, in discussing the Company's "board practices," the 2020 20-F stated, in relevant part:

> *Audit Committee*.   Our audit committee consists of Yongjin Fu, Gang Xiao and Andrew Y Yan. Yongjin Fu is the chairman of our audit committee. We have determined that Gang Xiao, Yongjin Fu and Andrew Y Yan satisfy the "independence" requirements of Rule 5605(c)(2) of the Nasdaq Stock Market Rules and Rule 10A-3 under the Exchange Act. We have determined that Yongjin Fu qualifies as an "audit committee financial expert." The audit committee oversees our accounting and financial reporting processes and the audits of the financial statements of our company. The audit committee is responsible for, among other things:

> \*\*\*

> - monitoring compliance with our code of business conduct and ethics, including reviewing the adequacy and effectiveness of our procedures to ensure proper compliance.

> \*\*\*

> *Nominating and Corporate Governance Committee*.   Our nominating and corporate governance committee consists of Hongyi Zhou, Andrew Y Yan and Wei Liu. Hongyi Zhou is the chairperson of our nominating and corporate governance committee. Andrew Y Yan satisfies the "independence" requirements of Rule 5605(a)(2) of the Nasdaq Stock Market Rules. The nominating and corporate governance committee assists the board of directors in selecting individuals qualified to become our directors and in determining the composition of the board and its committees. The nominating and corporate governance committee is responsible for, among other things:

> \*\*\*

> - advising the board periodically with regards to significant developments in the law and practice of corporate governance as well as our compliance with applicable laws and regulations, and making recommendations to the board on all matters of corporate governance and on any remedial action to be taken.

38.     Appended to the 2020 20-F as exhibits were signed certifications pursuant to SOX by Defendants H. Wu and Xu attesting that, "[t]he information contained in the [2020 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.     On May 27, 2021, 360 DigiTech issued a press release announcing the Company's

Q1 2021 unaudited financial results.  The press release stated, in relevant part:

> "We are very excited to start 2021 with a big bang! As macro economy in China
> continues to recover, we have experienced robust customer demand and further
> improvement in asset quality. We also believe recent regulatory actions will
> ultimately provide additional regulatory clarity for the leading platforms like us and
> pave the way for a healthy and consolidated industry. As our strategic initiatives
> achieved outstanding results across our operations, we further position ourselves to
> become one of the premium digital platforms in the long run. We feel more
> confident and thrilled than ever."

40.     That same day, 360 DigiTech hosted an earnings call with investors and analysts to

discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call").  During the scripted portion

of the Q1 2021 Earnings Call, Defendant H. Wu stated, in relevant part:

> Last, let me share a few thoughts regarding current regulatory environment that the
> guideline of the commercial bank's online lending practice issued by CBRC in July
> 2020 provided a basic regulatory framework for loan facilitation business. It set
> some very specific practice examples of the loan facilitation model. We have
> always conducted our business in strict compliance with this framework.
>
> That is one of the reasons why our loan facilitation model is well accepted by almost
> 100 financial institutions partners. We have a legal exposure in joint lending and
> student lending and stick to our role as a tech empowered loan facilitator. We also
> make sure we do not issue ABS over the leveraged limit.
>
> As you may know, we were among the 13 major FinTech internet platforms that
> the regulator invited to meet recently. At the meeting, the regulator acknowledged
> the importance of our role in improving the efficiency of financial service,
> providing service to our demand and reducing transaction costs. We believe the
> meeting was a necessary step to apply fill in the balance the regulatory supervision
> to market participants and promote the healthy development of the platform
> economy.
>
> Strengthening supervision of the leading players will increase clarity to the
> regulatory direction of the industry, reduce regulatory overhead, and promote a
> healthy and more consolidated market space.
>
> Compared to the other FinTech company at the meeting, our business models are
> relatively simple and straightforward. We have consistently held our operations to
> the highest of compliance standards. Therefore, we are very confident we can meet
> any regulatory requirements applied to this industry. As the regulatory framework

becomes more clear, we believe that leading FinTech firms like ourselves will embrace a historical era of growth.

41.     The statements referenced in ¶¶ 21-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had been collecting personal information in violation of relevant PRC laws and regulations; (ii) accordingly, 360 DigiTech was exposed to an increased risk of regulatory scrutiny and/or enforcement action; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

42.     On July 8, 2021, reports circulated on social media to the effect that the Company's core product, the 360 IOU app, had been removed from major app stores.  The reports came on the heels of the removal of other companies' apps as Chinese regulators investigated their customer data protection practices.  For example, an article published by the *21st Century Business Herald* on July 8, 2021 indicated that "[t]he reason for the removal may be related to the discussion with the central bank and other financial regulators on April 29 this year about 13 Internet financial platforms and requesting rectification."  In addition, the article stated, in relevant part:

> It is reported that the 13 Internet financial platforms interviewed by supervision are: Tencent, Duxiaoman Finance, JD Finance, ByteDance, Meituan Finance, Didi Finance, Lufax, Tianxing Digital, 360 Digital, Sina Finance, Suning Finance, Gome Financial Technology, and Ctrip Finance have been verified by 21st Century Business Herald reporters. As of press time, only the 360 IOU APP under 360 Digital has been removed from the shelves, and other platforms can still be searched in major app stores.
>
> The 21st Century Business Herald reporter asked 360 Digital Technology for verification. The relevant person in charge did not deny the removal, but

expressed inconvenience to disclose more information on the reasons for the removal.

***

A reporter from 21st Century Business Herald interviewed a number of Internet financial business professionals and learned that on April 29, the central bank interviewed the mutual fund platform and pointed out that online platform companies generally have unlicensed or over-licensed financial services, imperfect corporate governance mechanisms, and regulatory arbitrage, Unfair competition [*sic*], damage to consumers' legal rights and other serious violations, and put forward seven rectification requirements. The interviewed companies also carried out self-examinations after the interview, and successively submitted rectification plans. After more than two months, the 360 IOUs were removed suddenly.

43. On this news, 360 DigiTech's stock price fell $7.12 per share, or 21.48%, to close at $26.02 per share on July 8, 2021.

44. Then, on July 9, 2021, *Seeking Alpha* reported that 360 DigiTech confirmed the removal of its 360 IOU app from the Android app store and quoted a Company spokesperson, who disclosed that the Company had "submitted a new rectification plan and stepped up the whole process."

45. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired 360 DigiTech securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate

18

families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, 360 DigiTech securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by 360 DigiTech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of 360 DigiTech;

- whether the Individual Defendants caused 360 DigiTech to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of 360 DigiTech securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- 360 DigiTech securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold 360 DigiTech securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of 360 DigiTech securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire 360 DigiTech securities and options at artificially inflated prices. In furtherance of this unlawful

scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for 360 DigiTech securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about 360 DigiTech's finances and business prospects.

59.     By virtue of their positions at 360 DigiTech, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of 360 DigiTech, the Individual Defendants had knowledge of the details of 360 DigiTech's internal affairs.

61.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of 360 DigiTech.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to 360 DigiTech's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of 360 DigiTech securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning 360 DigiTech's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired 360 DigiTech securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, 360 DigiTech securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of 360 DigiTech securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of 360 DigiTech securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of 360 DigiTech securities declined

sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

65.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of 360 DigiTech, and conducted and participated, directly and indirectly, in the conduct of 360 DigiTech's business affairs.  Because of their senior positions, they knew the adverse non-public information about 360 DigiTech's misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to 360 DigiTech's financial condition and results of operations, and to correct promptly any public statements issued by 360 DigiTech which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which 360 DigiTech disseminated in the marketplace during the Class Period concerning 360 DigiTech's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause 360 DigiTech to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of 360 DigiTech within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of 360 DigiTech securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of 360 DigiTech.  By reason of their senior management positions and/or being directors of 360 DigiTech, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, 360 DigiTech to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of 360 DigiTech and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by 360 DigiTech.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 13, 2021                          Respectfully submitted,

                                               POMERANTZ LLP

                                               */s/ Jeremy A. Lieberman*
                                               Jeremy A. Lieberman
                                               J. Alexander Hood II
                                               Thomas H. Przybylowski
                                               600 Third Avenue
                                               New York, New York 10016
                                               Telephone: (212) 661-1100
                                               Facsimile: (212) 661-8665
                                               jalieberman@pomlaw.com
                                               ahood@pomlaw.com
                                               tprzybylowski@pomlaw.com

                                               HOLZER & HOLZER, LLC
                                               Corey D. Holzer
                                               (*pro hac vice* application forthcoming)
                                               211 Perimeter Center Parkway, Suite 1010
                                               Atlanta, Georgia 30346
                                               Telephone: (770) 392-0090
                                               Facsimile: (770) 392-0029
                                               cholzer@holzerlaw.com

                                               *Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Pedro Balderas, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against 360 DigiTech, Inc. ("360 DigiTech" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire 360 DigiTech securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired 360 DigiTech securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in 360 DigiTech securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.     I declare under penalty of perjury that the foregoing is true and correct.


**Executed** <u>   07/09/2021                  </u>
                     **(Date)**

DocuSigned by:

*Pedro Balderas*

A047C59E91CA4D1...

_____
               **(Signature)**


                       Pedro Balderas
_____
             **(Type or Print Name)**

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 07/02/2021 | Purchase | 200 | $37.08 |
| 07/02/2021 | Purchase | 250 | $36.85 |
| 07/02/2021 | Purchase | 32 | $36.50 |