**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re 360 DigiTech, Inc. Securities Litigation | No. 1:21-cv-06013-AKH<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION ........................................................................................ 2

        A.      Introduction.................................................................................................. 2

        B.      360 DigiTech's Consumer Lending Business Model Led it to Collect
                User's Personal Data .................................................................................... 4

        C.      360 DigiTech was Subject to Numerous Chinese Data Privacy Regulations
                Governing the Collection of Customers' Personal Information ...................... 5

        D.      Defendants Misled Investors, Simultaneously Touting 360 DigiTech's
                Compliance While Actively Violating Chinese Data Privacy Laws ..................... 7

        E.      The Truth of Defendants' Over-Collection Begins to Emerge, Causing 360
                DigiTech's Share Price to Fall, Yet Defendants Continue to Downplay
                Warnings from the Chinese Government ............................................................ 9

        F.      The Full Extent of 360 DigiTech's Violations Comes to Light After the
                Chinese Government Removes its Core App from App Stores........................... 12

II.     JURISDICTION AND VENUE .................................................................................... 13

III.    PARTIES ..................................................................................................................... 13

        A.      Lead Plaintiff ............................................................................................... 13

        B.      Defendants ................................................................................................... 14

                1.      Corporate Defendant - 360 DigiTech ...................................... 14

                2.      Individual Defendants.............................................................. 14

IV.     SUBSTANTIVE ALLEGATIONS OF FRAUD............................................................ 16

        A.      360 DigiTech's Loan Facilitation Business Hinged on Access to Large
                Amounts of Personal Data ........................................................................... 16

                1.      360 DigiTech's Business ......................................................... 16

                2.      360 DigiTech Collected Substantial Amounts of Personal Data
                        From Customers...................................................................... 17

        B.      360 DigiTech was Required to Comply with Chinese Regulations When
                Collecting and Storing Customer's Personal Information.................................. 18

        C.      360 DigiTech Violated Chinese Data Privacy Regulations by Over-
                Collecting Customers' Personal Information Without Consent .......................... 23

D.     360 DigiTech Falsely Touted Compliance with Chinese Regulations ................. 24

E.     Government Regulators Warn 360 DigiTech of its Non-Compliance ................. 28

F.     The Truth Begins to Emerge as Chinese Regulators Reveal 360 DigiTech's Violations and Ultimately Remove the 360 Jietiao App from App Stores ................................................................................................. 29

G.     The Full Truth is Revealed When the 360 Jietiao App is Pulled from App Stores For Over-Collecting Personal Data ............................................ 31

V.     DEFENDANTS' FALSE AND MISLEADING STATEMENTS ................................... 32

A.     April 30, 2020 – Form 20-F ......................................................................... 33

B.     May 28, 2020 – 1Q 2020 Earnings Call ...................................................... 34

C.     June 2, 2020 – Press Release ....................................................................... 35

D.     June 3, 2020 – Press Release ....................................................................... 35

E.     November 19, 2020 –3Q 2020 Earnings Call .............................................. 36

F.     April 21, 2021 – Form 20-F ........................................................................ 36

VI.     FACTS ABOUT THE IMPACT OF DEFENDANTS' ILLEGAL CONDUCT ARE REVEALED ................................................................................................... 37

A.     Chinese Regulators Warned 360 DigiTech of its Violations on May 10, 2021, but Defendants Ignored These Warnings and Falsely Reassured Investors of the Company's Compliance ..................................................... 37

B.     The Full Truth was Revealed When Chinese Regulators Removed the 360 Jietiao App from App Stores ................................................................... 39

VII.     LOSS CAUSATION ................................................................................................ 40

A.     May 10, 2021 – First Partial Corrective Disclosure/Materialization of the Risk .......................................................................................................... 42

B.     July 8, 2021 – Final Corrective Disclosure/Materialization of the Risk .............. 43

VIII.     ADDITIONAL INDICIA OF SCIENTER ................................................................. 46

A.     Data Privacy Regulations and the 360 Jietiao App Were Critical to 360 DigiTech's Core Operations, which Supports a Strong Inference of Scienter ....................................................................................................... 47

B.     Defendants' Knowledge of the Chinese Government's Heightened Scrutiny on Fintech Companies' Data Collection Procedures Supports a Strong Inference of Scienter ................................................................... 48

C.     Defendants' Statements Themselves Support a Strong Inference of Scienter ................................................................................................... 50

IX.     CONTROL PERSON ALLEGATIONS ........................................................ 51

X.     CLASS ACTION ALLEGATIONS .............................................................. 53

XI.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE ................................................................................... 55

XII.     NO SAFE HARBOR ...................................................................................... 57

XIII.     CAUSES OF ACTION ................................................................................... 58

COUNT I Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against 360 DigiTech and the Individual Defendants ...................................... 58

COUNT II Violation of Section 20(a) of the Exchange Act Against All Individual Defendants ..................................................................................................... 60

PRAYER FOR RELIEF ........................................................................................... 61

JURY DEMAND ....................................................................................................... 61

Court-appointed Lead Plaintiff Gad Sorek ("Lead Plaintiff"), individually and on behalf of all persons and entities who or which, during the period from April 30, 2020 through July 8, 2021, inclusive (the "Class Period"), purchased the publicly traded American Depositary Shares ("ADSs") of 360 DigiTech, Inc. ("360 DigiTech" or the "Company") and were damaged thereby (the "Class")[1], bring this Consolidated Class Action Complaint for Violation of the Federal Securities Laws against Defendants 360 DigiTech, several of 360 DigiTech's senior executives—Chief Executive Officer ("CEO") Haisheng Wu, former Chief Financial Officer ("CFO") and Chief Strategy Officer ("CSO") Jiang Wu, current CFO Zuoli "Alex" Xu, and Chairman of the Board of Directors and controlling shareholder Hongyi Zhou (collectively, the "Individual Defendants").

Lead Plaintiff's claims are brought upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon, among other things, a review and analysis of: (1) reports and documents filed by 360 DigiTech with the Securities and Exchange Commission; (2) reports issued by analysts covering or concerning 360 DigiTech and its business; (3) press releases, news articles, transcripts, videos, and other public statements issued by or about 360 DigiTech, its business, and the Individual Defendants; (4) an investigation conducted by Lead Plaintiff's attorneys, including interviews with former 360 DigiTech employees; and (5) other publicly available information concerning 360 DigiTech, its business, and the allegations contained herein.  Lead Plaintiff believes that substantial additional evidentiary support exists for the allegations herein and will continue to be revealed after Lead Plaintiff has a reasonable

---

[1] Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of 360 DigiTech during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) 360 DigiTech's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

opportunity for discovery.

## I.    NATURE OF THE ACTION

### A.    Introduction

1.    This securities fraud class action arises out of 360 DigiTech's repeated misstatements and omissions to U.S. investors concerning the Company's compliance with People's Republic of China's ("PRC," or "China," or "Chinese") data privacy and Financial-Technology ("Fintech") regulations governing the collection and use of consumers' personal information.

2.    360 DigiTech's primary business consisted of facilitating consumer loans, *i.e.* matching borrowers with lending institutions through what the Company described as its "core product," the 360 Jietiao mobile application ("app").  As part of this process, the Company collected massive amounts of personal data on each of their users.  However, strict Chinese data privacy regulations restricted the types of personal information 360 DigiTech was allowed to collect.

3.    Moreover, those regulations also required the Company to obtain users' consent **before** collecting and storing their personal information.  Defendants knew the risks associated with non-compliance with these regulations.  As the Company explained, "[a]ny non-compliance with any data privacy regulations would lead to severe sanctions including the "**closedown of websites or even criminal liabilities against us**."

4.    Defendants, however, chose to ignore the regulations and the consequences of violating them and throughout the Class Period **over-collected their customers' personal information without consent**.  In fact, 360 DigiTech was eventually caught by Chinese regulators for over-collecting user's personal data without consent.  Moreover, on the last day of the Class

Period—July 8, 2021—Sohu Business, a major Chinese business publication, reported that "the relevant person in charge [at 360 DigiTech]" *admitted* that the 360 Jietiao app was pulled from the market by regulators because of Defendants' "*illegal use of personal information*." Nonetheless, throughout the Class Period, Defendants knowingly and falsely assured investors, stating that "*we have __always__ adhered to the highest standard in compliance*" and "*we __always__ obtain users' consent for our use of data*."

5.    However, as further reported on July 8, 2021 by 21st Century Business Herald, another major Chinese business publication, 360 DigiTech executives attended a meeting on April 29, 2021, in which Chinese financial regulators warned them that 360 DigiTech was in violation of Chinese data privacy regulations based on the Company's over-collection and use of borrowers' personal information (the "April 29 Meeting").

6.    Then, on May 10, 2021, Chinese regulators posted a public notice on the internet detailing that 360 DigiTech "collect[ed] *personal information unrelated to the services provided [and] collect[ed] and use[d] personal information without the user's consent*." In addition, the regulators ordered Defendants to bring their data collection practices into compliance within 15 days or be subject to regulatory action. Investors reacted swiftly to the revelation of the Company's data privacy violations causing 360 DigiTech's stock price to drop nearly 5% on May 10, 2021.

7.    Despite the disclosure, Defendants misleadingly downplayed the Company's illegal data collection practices. On May 27, 2021—the first time they addressed investors after the 15-day compliance deadline passed—Defendants reassured investors that "*[w]e have consistently held our operations to the highest of compliance standards*," giving investors the

3

false impression that 360 DigiTech had already brought the app back into compliance as required by regulators.

8.      However, investors were stunned on July 8, 2021 when Chinese regulators **removed the 360 Jietiao app from app stores**, which the Company **admitted** was the result of  its "**illegal use of personal information**."  Though 360 DigiTech had dozens of competitors, the 360 Jietiao app was the **only app removed** from app stores for **non-compliance with data privacy regulations**. As a result of this news, 360 DigiTech's stock price plummeted **21.48%**, harming investors, including members of the proposed Class in this action.

**B.      360 DigiTech's Consumer Lending Business Model Led it to Collect User's Personal Data**

9.      360 DigiTech is one of the largest consumer lending institutions in China.[2]  The Company's primary business consists of matching consumers seeking personal loans with financial institutions willing to lend to consumers.  360 DigiTech generates revenue by charging various fees for its services, including loan facilitation and service fees, whereby the Company receives a fee based on a percentage of the principal of each loan it facilitates for a particular financial institution.

10.      On December 14, 2018, 360 DigiTech decided to raise capital from U.S. investors when it held an initial public offering through a sponsored ADS program.[3]  Throughout the Class

---

[2] 360 DigiTech also operates in partnership with one of the largest internet companies in China, 360 Security Technology Inc. ("360 Group"), which develops and distributes a wide array of technology and data-based products including antivirus software, a proprietary web browser, and a mobile application store.

[3] An ADS is a U.S. dollar denominated form of equity (*i.e.* stock) ownership in a non-U.S. company.  It represents the foreign shares of a company held on deposit by a custodian bank in the company's home country and carries the corporate and economic rights of the foreign shares, subject to the terms specified on the ADS certificate.  A sponsored ADS is one that has been created and supported by the company that issued the underlying stock.

Period, 360 DigiTech ADSs traded in the United States on the NASDAQ stock exchange under the ticker "QFIN."[4]

11.    360 DigiTech offers its lending services primarily through its "core product," the 360 Jietiao app, which it markets under the 360 Jietiao brand.  Consumers can download this app on their mobile phones through most app stores, including: the Android market and Apple app store platforms; 360 Group's own app store; and other major Chinese app stores, including, Tencent app bao, Huawei app market, and Xiaomi app market.

12.    During the Class Period, 360 DigiTech collected and stored massive amounts of customers' personal data, which the Company touted as a competitive advantage over its peers. Indeed, according to 360 DigiTech, the Company analyzed "thousands of data points" and over "3000 variables" to create a profile on a potential borrower.  As the Company misleadingly explained during the Class Period, "[l]arge volumes of high-quality data is a key factor differentiating online finance platforms.  *We have gained a considerable competitive advantage with our proprietary data collection, processing, and analyzing capabilities*."

C.    **360 DigiTech was Subject to Numerous Chinese Data Privacy Regulations Governing the Collection of Customers' Personal Information**

13.    Critically, however, 360 DigiTech was required to collect and store customers' personal data in compliance with numerous strict regulations governing the Fintech industry, as well as specific regulations focused on protecting consumers' data privacy.  At bottom, each of the regulations *limited the specific types of data the Company could collect* and *required consent from the consumer* for their data to be collected, stored, and analyzed.

14.    Fintech and data privacy regulations have been in place in China for many years. Indeed, 360 DigiTech acknowledged during the Class Period that laws promulgated as early as

---

[4] Bank of New York Mellon serves as acting depository bank for the ADSs.

2011 required that "[a]n internet information service provider **must expressly inform the users** of the method, content and purpose of the collection and processing of such user personal information, and may only collect such information **necessary for the provision of its services**."

15.    However, on January 25, 2019, prior to the beginning of the Class Period, the Chinese government began a "crackdown" on companies that collected personal information through mobile phone apps.  This crackdown led to the promulgation of a series of rules and regulations governing the collection of personal information—to all of which 360 DigiTech was subject.

16.    For example, on November 28, 2019, less than six months before the start of the Class Period, the Chinese government issued a public notice entitled "Definition of Apps' Illegal and Irregular Collection and Use of Personal Information."  The definition explicitly identified six violations related to the collection and use of personal information by apps, including failure to **obtain users' consent** before collecting and using personal information.  Over the course of the Class Period, numerous Chinese regulators issued similar regulations that applied to 360 DigiTech's collection of personal data and required the Company to collect only certain information necessary to loan facilitators and obtain user consent.

17.    On June 2, 2020, 360 DigiTech issued a press release acknowledging that the Chinese data privacy laws governing the collection of personal information applied to the Company, stating: "[s]ince 2019, Chinese authorities have cracked down on illegal collection and misuse of personal information by internet-related companies.  As a result, hundreds of app operators have been fined, issued rectification orders, or warned for their lack of privacy protections and failure to explicitly outline the scope of personal information use or excessive data collection in their apps, among other practices."

18.     Moreover, in March 2021, four PRC regulatory bodies, the Cyberspace Administration of China, the Ministry of Industry and Information Technology, the Ministry of Public Security, and the State Administration of Market Regulation, jointly issued a notice entitled "Provisions on the scope of Necessary Personal Information for Common Types of Mobile Internet Applications," which **strictly limited the definition of necessary personal data** to a users' name, phone number, certification number and type, the expiration date of their certification, and their bank card number.

19.     If found to have violated these data privacy regulations, Defendants knew that 360 DigiTech faced severe penalties, including criminal sanctions and **removal of its app** from app stores.   For example, during the Class Period, 360 DigiTech acknowledged that "[a]ny non-compliance" with any data privacy regulations would lead to "warnings, fines, investigations, lawsuits, confiscation of illegal gains, revocation of licenses, cancellation of filings, closedown of websites or even criminal liabilities against us[.]"   Given that the 360 Jietiao app was the Company's "core product," any such removal would invariably lead to a dramatic downturn in 360 DigiTech's ADS share price.

**D.     Defendants Misled Investors, Simultaneously Touting 360 DigiTech's Compliance While Actively Violating Chinese Data Privacy Laws**

20.     Though aware of the fact that 360 DigiTech was subject to strict data privacy regulations, Defendants chose to ignore them.   From the beginning of the Class Period, 360 DigiTech over-collected personal information from its customers, violating the very regulations that governed that data procurement.   Specifically, on July 8, 2021, the last day of the Class Period, Sohu Business, a major Chinese business publication, reported that "the relevant person in charge [at 360 DigiTech]" **admitted** that the 360 Jietiao app was pulled from the market by regulators because of Defendants' "**illegal use of personal information**."

21.     Nonetheless, since the start of the Class Period, Defendants consistently misrepresented that the Company's data collection practices conformed with all regulations.  For example, on April 30, 2020, the first day of the Class Period, 360 DigiTech filed its 2019 Annual Report on SEC Form 20-F (the "2019 Form 20-F"), which falsely touted the Company's compliance with Chinese data privacy regulations, including the requirement that 360 DigiTech obtain consent before collecting a customer's personal information, stating: "[w]e are ***dedicated to privacy protection of our borrowers*** during our risk management process, and we adopt ***policies to make sure we <u>always</u> obtain users' consent for our use of data*** and enquire from other sources of their information."

22.     Defendants continued to make these false assurances regarding the Company's compliance with Chinese regulations throughout the Class Period.  For instance, Defendants confidently assured investors "***[i]n terms of compliance***, as a leading fintech platform in China, ***we have <u>always</u> adhered to the highest standard in compliance***."

23.     Similarly, Defendants touted 360 DigiTech's compliance and data collection abilities while also acknowledging that these were critical for the Company's ongoing success and even a competitive advantage, stating that "[a]s a leading Fintech player, ***we have <u>always</u> ensured that we maintain the highest standard of compliance in line with the latest regulations. This is critical for healthy and sustainable development of our business***," and "[l]arge volumes of high-quality data is a key factor differentiating online finance platforms. ***We have gained a considerable competitive advantage with our proprietary data collection, processing, and analyzing capabilities***."

24.     Analysts were convinced by Defendants' assurances about 360 DigiTech's data privacy compliance and issued strong "Buy" recommendations.  For example, on August 5, 2020,

an analyst from CMB International Securities issued a report initiating coverage on 360 DigiTech rating the Company to "outperform."  The report explained "360 Finance is our *sector top pick*, given its *comprehensive strength* in client base, funding profile, risk management and *regulatory compliance*."

25.    Similarly, on March 16, 2021, Citi issued an analyst report giving the Company a "Buy" rating and explaining "*[a]s we see regulatory overhang as largely removed and QFIN as the key beneficiary of the regulatory scrutiny against big tech* . . . QFIN's valuation should continue to rerate and deserves a valuation premium over [its competitors] given its superior risk mgmt [sic] capability."

26.    But as discussed above, Defendants' statements, such as that the Company "*always adhered to the highest standard in compliance*," were false and misleading because Defendants knew they were over-collecting consumer data in violation of Chinese data privacy laws. Specifically, contrary to Defendants' statements, 360 DigiTech over-collected its users' personal information unrelated to the services provided and without its users' consent in violation of the *Regulations on the Scope of Necessary Personal Information for Common Mobile Internet Applications* and the *Definition of Apps' Illegal and Irregular Collection and Use of Personal Information*, which has been in place in China since November 28, 2019.

   **E.    The Truth of Defendants' Over-Collection Begins to Emerge, Causing 360 DigiTech's Share Price to Fall, Yet Defendants Continue to Downplay Warnings from the Chinese Government**

27.    Although Defendants' false and misleading statements regarding 360 DigiTech's over-collection of customer data continued throughout the Class Period, July 8, 2021, the last day of the Class Period, 21st Century Business Herald, a major Chinese business publication, reported that on April 29, 2021, the Chinese government notified 360 DigiTech that it was in violation of regulations governing the collection and use of borrowers' personal information.  The regulators

also ordered the Company to bring the 360 Jietiao app into compliance. Defendants, however, downplayed these warnings and continued to conceal the truth about the Company's over-collection of personal data without consent.

28.     Specifically, on April 29, 2021, 360 DigiTech executives attended a meeting with Chinese financial regulators. At the April 29 Meeting, Chinese regulators warned Defendants that 360 DigiTech was in violation of regulations governing the collection and use of borrowers' personal information. After the meeting, the regulators issued seven "rectification requirements," including the mandate that 360 DigiTech "standardize the collection and use of personal information, marketing and publicity activities and format contracts."

29.     Then, on May 10, 2021, the Office of the Central Cyberspace Affairs Commission, the Chinese regulatory body responsible for managing internet-related issues, issued a public bulletin containing a list of internet finance apps that were engaged in the illegal collection of personal information (the "May 10 Bulletin"). The 360 Jietiao app—360 DigiTech's primary revenue generating app—was included on the list.

30.     Chinese authorities released the May 10 Bulletin after the Cyberspace Administration of China conducted inspections of popular online lending apps. The May 10 Bulletin explained the 360 Jietiao app was found to have "[v]iolate[d] the necessary principles and the requirements of *Regulations on the Scope of Necessary Personal Information for Common Mobile Internet Applications*, collect[ed] personal information unrelated to the services provided [and] collect[ed] and use[d] personal information without the user's consent." The May 10 Bulletin then ordered 360 DigiTech to bring the 360 Jietiao app into compliance with all applicable Chinese data privacy regulations within 15 days.

31.    On the news that Defendants were over-collecting their users' personal information without their consent, 360 DigiTech's stock price dropped nearly 5%.  However, in response to this chance to inform investors of the ***entire truth*** regarding their over-collection of personal data in violation of Chinese regulations, Defendants ***downplayed*** the inevitability of continuing regulatory action, instead falsely reassuring investors that the Chinese government's scrutiny was a positive for the Company.

32.    Specifically, when discussing the April 29 Meeting with analysts on the Company's May 27, 2021 earnings call, Defendant Haisheng Wu misleadingly downplayed the Company's non-compliance (and the near certainty of ongoing regulatory action) by assuring investors that 360 DigiTech was in compliance with regulatory requirements despite knowing the opposite was true:

> As you may know, we were among the 13 major FinTech internet platforms that the regulator invited to meet recently. At the meeting, the regulator acknowledged the importance of our role in improving the efficiency of financial service, providing service to unmet demand and reducing transaction costs. We believe the meeting was a necessary step to apply fair and balanced regulatory supervision to market participants and promote the healthy development of the platform economy.
>
> Strengthening supervision of the leading players will increase clarity to the regulatory direction of the industry, reduce regulatory overhang, and promote a healthy and more consolidated market space. Compared to the other fintech companies at the meeting, our business models are relatively simple and straightforward. ***We have consistently held our operations to the highest of compliance standards. Therefore, we are very confident we can meet any regulatory requirements applied to this industry***. As the regulatory framework becomes more clear, we believe that leading fintech firms like ourselves will embrace a historical era of growth.

33.    By downplaying the importance of the April 29 Meeting and obfuscating its true nature and purpose, Defendants falsely reassured investors that the Company was at that time operating in compliance with all Chinese data privacy regulations.  Further, investors were aware that the May 10 Bulletin allowed the Company 15 days to bring the 360 Jietiao app into compliance

11

before any regulatory action would be taken.  By failing to disclose that the Company continued to violate Chinese data privacy regulations at the time of his statement and reassuring the market that "*[w]e have consistently held our operations to the highest of compliance standards*," Defendant Haisheng Wu, gave investors the false impression that the Company was currently in compliance with all applicable Chinese data privacy regulations and that there would be no regulatory action as a result.

### F.    The Full Extent of 360 DigiTech's Violations Comes to Light After the Chinese Government Removes its Core App from App Stores

34.    Just over a month later, on July 8, 2021, as a result of 360 DigiTech's non-compliance, Chinese regulators *removed the 360 Jietiao app* from most major app stores within China, including the Android app store and 360 Group's app store.  Indeed, though 360 DigiTech had dozens of competitors, *the 360 Jietiao app was the <u>only app removed from app stores</u> for non-compliance with data privacy regulations*.  As a result, potential borrowers were no longer able to download the app and could not apply for a loan through the app, eviscerating 360 DigiTech of its "core product," and therefore its primary revenue stream.

35.    That same day, Sohu Business, a major Chinese business publication, reported that the 360 Jietiao app had been removed from "mainstream application platforms such as Tencent App Store, Huawei App Store, Xiaomi App Store and 360 Mobile Assistant."  According to the report, "the relevant person in charge [at 360 DigiTech]" admitted that "*the removal was related to the <u>illegal</u> use of personal information*."

36.    This news stunned the market, causing 360 DigiTech's stock price to drop precipitously.  When the market closed on July 8, 2021, the Company's stock had dropped $7.12 per share, or *21.48%*, to close at $26.02.

37.     On July 9, 2021, U.S. financial news publisher Seeking Alpha released a post confirming that the 360 Jietiao app had been removed from app stores because the Company had been improperly "over-collecting and using personal information." The post quoted a spokesperson from 360 DigiTech who stated "[c]urrently, we have submitted a new rectification plan and stepped up the whole process."

## II.   JURISDICTION AND VENUE

38.     These claims arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

39.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

40.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). 360 DigiTech transacts business in New York, including in this District. Further, 360 DigiTech's securities trade on the NASDAQ stock market under the ticker symbol "QFIN." In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   PARTIES

### A.   Lead Plaintiff

41.     Lead Plaintiff Gad Sorek is an individual investor who acquired 360 DigiTech securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged fraudulent conduct. Lead Plaintiff's certification filed in support of his motion for appointment as lead plaintiff is incorporated by reference herein (ECF No. 20-1).

### B.    Defendants

#### 1.    Corporate Defendant - 360 DigiTech

42.    360 DigiTech operates a digital consumer finance platform under the 360 Jietiao brand in the PRC.  The Company was formerly known as 360 Finance, Inc. and changed its name to 360 DigiTech in September 2020.  360 DigiTech is incorporated in the Cayman Islands with principal executive offices located at 7/F Lujiazui Finance Plaza, No. 1217, Dongfang Road, Pudong New Area, Shanghai 200122, PRC.  The Company's agent for service of process in the United States is Cogency Global Inc., located at 10 E. 40 Street, 10th Floor, New York, NY 10016.

43.     360 DigiTech operates in partnership with one of the largest internet companies in China, 360 Group, formerly known as Qihoo 360 Technology Co. Ltd. ("Qihoo 360").  360 Group is an internet security and technology company that develops and distributes a wide array of technology and data-based products including antivirus software, a proprietary web browser, and a mobile application store.  In the Company's 2019 Form 20-F 360 DigiTech identified 360 Group as its "most important business partner."

#### 2.    Individual Defendants

44.    Defendant Haisheng Wu has served as the Company's CEO and a member of the Company's Board of Directors since August 2019.  In his role as CEO of 360 DigiTech, Defendant Haisheng Wu participated in earnings calls with securities analysts, during which he made false and misleading statements and omissions of material fact relating to 360 DigiTech's compliance with Chinese lending and data privacy regulations.  Defendant Haisheng Wu also signed the Company's SEC Forms 20-F for the years ended December 31, 2019 and December 31, 2020, which contained materially false and misleading statements and omissions of material fact as detailed below.

45.     Defendant Jiang Wu was CFO of 360 DigiTech from the start of the Class Period until July 2020.  From July 2020 to March 15, 2021, Defendant Jiang Wu served as the Company's CSO.  Defendant Jiang Wu also served a member of the Company's Board of Directors from March 27, 2020 to March 15, 2021.  Defendant Jiang Wu signed the Company's SEC Form 6-K disclosing the 360 DigiTech's unaudited financial results for the quarter ended March 31, 2020, which contained materially false and misleading statements and omissions of material fact as detailed below.

46.     Defendant Zuoli "Alex" Xu ("Xu") has served as 360 DigiTech's CFO since July 2020 and a member of the Company's Board of Directors since March 2021.  As CFO, Defendant Xu signed the Company's SEC Form 6-Ks disclosing the 360 DigiTech's unaudited financial results for all quarters between April 1, 2020 and July 8, 2021, which contained materially false and misleading statements and omissions of material fact as detailed below.

47.     Defendant Hongyi Zhou ("Zhou") has served as a member of 360 DigiTech's Board of Directors since the Company's inception and has been Chairman of the Board of Directors since September 2018.  Throughout the Class Period, Defendant Zhou owned a majority of the Company's voting shares.  As of December 10, 2021, he owned 75.2% of the aggregate voting shares of 360 DigiTech.  As a result, Defendant Zhou had the power to control, and did control, 360 DigiTech throughout the Class Period.

48.     Together, Defendants Haisheng Wu, Jiang Wu, Xu, and Zhou are referred to herein as the "Individual Defendants."  The Individual Defendants, by virtue of their high-level positions at 360 DigiTech, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential

proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition, as alleged herein.

## IV.    SUBSTANTIVE ALLEGATIONS OF FRAUD

### A.    360 DigiTech's Loan Facilitation Business Hinged on Access to Large Amounts of Personal Data

#### 1.    360 DigiTech's Business

49.    360 DigiTech was founded in 2016 under the name 360 Finance.  The Company is headquartered in Shanghai, China.  To highlight its "data driven, technology empowered digital platform," the Company changed its name from 360 Finance to 360 DigiTech on September 15, 2020.  As Mandy Dong, 360 DigiTech's Investor Relations Director explained to investors, the Company's "core product" was 360 Jietiao, an online consumer lending app.

50.    Since its inception, 360 DigiTech has leveraged the growing Chinese consumer lending market to position itself as one of the largest Fintech companies in China.  As of December 31, 2020, the Company had approved credit lines for 30.9 million users, an increase of over 6 million users compared to the prior year.  And at the same time, had outstanding loans totaling RMB 92.1 billion, or approximately $14.4 billion.

51.    360 DigiTech's primary business consists of matching consumers seeking loans with financial institutions willing to lend to consumers.  The Company generates revenue by charging various fees for its services, including loan facilitation and service fees, whereby the Company receives a fee based on a percentage of the principal of each loan it facilitates for a particular financial institution.  Consumers can apply directly for loans though the Company's 360 Jietiao app and borrowers who are approved receive a credit line typically ranging from RMB 1,000 to RMB 200,000 (approximately US$150 to US$30,000).

52.     360 DigiTech's customers in China access the 360 Jietiao app through most major app stores, including the Android and Apple platforms as well as other major Chinese app stores, including 360 Group's app store, Tencent app bao, Huawei app market, and Xiaomi app market.

### 2.     360 DigiTech Collected Substantial Amounts of Personal Data From Customers

53.     360 DigiTech generated profits by running background analyses on each potential borrower who applied for a loan to determine whether to lend.  Indeed, both of the Company's primary lending models, referred to as "capital heavy"[5] and "capital light,"[6] required the Company to analyze specific aspects of borrowers' personal data in order to generate revenue.  The Company conducted these analyses by utilizing "thousands of data points" and over 3,000 variables on each potential borrower.

54.     360 DigiTech accessed data not only to generate revenue from borrowers, but according to its own public statements also to differentiate itself from competitors.  For example, in the Company's 2019 Form 20-F it stated: "large volumes of high quality data differentiate online consumer lending platforms, and *we have a meaningful competitive advantage based on our proprietary data collection abilities, our collaboration with 360 Group and other third-party providers.*"  The Company doubled down on this statement in its 2020 Form 20-F stating: *"[l]arge volumes of high-quality data is a __key factor__ differentiating online finance platforms. We have*

---

[5] Under the capital heavy model, Company essentially acts as an underwriter of the loan and in the event of a default, must pay the institution funding the loan both the outstanding principal and any unpaid interest.  According to the 360 DigiTech's 2020 Form 20-F, revenue generated from capital-heavy loans accounted for approximately 68% of 360 DigiTech's net revenues for the year ended December 31, 2020.

[6] Under the capital light model, 360 DigiTech either does not guarantee the loan or guarantees only a portion of the loan, meaning the Company's potential liability is substantially reduced.  However, when facilitating a loan under this model the Company provides value to lenders by offering its credit and risk assessment services.  Revenue generated from the loan facilitation and servicing fees for capital-light loans accounted for approximately 13.5% of the Company's net revenue for the year ended December 31, 2020.

*gained a considerable competitive advantage with our proprietary data collection, processing, and analyzing capabilities*."

55.    Similarly, Defendant Haisheng Wu attributed the Company's first quarter 2020 financial success to its ability to comply with the "strict" Chinese data privacy regulations and touted that these benefitted larger companies such as 360 DigiTech: "[w]e always believe that the strict regulatory requirements and the economic downturn pressure would benefit top players backed by industry giant, while gradually weeding out small, medium platforms that are too weak to compete. This trend known as Matthew Effect[7] has so far been proven in the first quarter."

**B.    360 DigiTech was Required to Comply with Chinese Regulations When Collecting and Storing Customer's Personal Information**

56.    Importantly, however, throughout the Class Period, the Company was required to comply with numerous regulations concerning the Fintech industry as a whole, as well as specific regulations focused on protecting consumers' data privacy.

57.    As the Chinese Fintech and personal loan industries grew (as did concerns that companies operating in that sector were beginning to play fast and loose with consumer data), Chinese regulators sought to keep pace and protect consumers by promulgating a series of strict data privacy regulations focused on the Fintech industry and thus, 360 DigiTech.  As a result, over the course of a ten-year period between 2011 and 2021, Chinese regulators implemented numerous regulations with which 360 DigiTech was required to comply.  These regulations were aimed at limiting both the amount of information internet-based companies are permitted to collect and store as well as the way in which those companies can use and share the information.  Critically,

---

[7] The "Matthew Effect" also known by the axiom "the rich get richer, and the poor get poorer" is an economic principle whereby individuals or entities probabilistically accrue a total reward in proportion to their existing degree.

the regulations also required that Fintech companies such as 360 DigiTech obtain the users' consent before collecting and storing their personal data.

58.    In 2011, the Ministry of Industry and Information Technology of the People's Republic of China (the "MIIT") promulgated "Provisions on Standardizing the Internet Information Service Market."[8]  Article 11 of these provisions prohibits internet service providers from collecting personally identifiable information or providing such information to third parties without the users' consent.

59.    Similarly, on November 7, 2016, the Chinese government promulgated the Cyber Security Law.  According to Article 41 of the Cyber Security Law, network operators must comply with the principals of legality, rationality, and necessity in collecting and using personal information; must publicize the rules of collection and use; must explicitly articulate the purpose, means, and scope of the collection of a person's information; and must obtain the information owner's consent to use or collect such information.

60.    On January 25, 2019, the Cyberspace Administration of China, the Ministry of Industry and Information Technology, the Ministry of Public Security, and the State Administration of Market Regulation jointly issued a "Announcement on Carrying Out Special Rectification on the Collection and Use of Personal Information by Apps in Violation of Laws and Regulations."  The crackdown lasted for a full-year and led to the promulgation of a series of rules governing the collection of personal information—to all of which 360 DigiTech was subject.

61.    In that announcement, Chinese regulators explained that they were engaging in a crackdown on apps that collected personal information as the result of "the rampant collection of personal information through coercive permission, excessive requests of permission or beyond the

---

[8] The Company refers to these provisions in its 2020 Form 20-F as the "Several Provisions on Regulating the Market Order of Internet Information Services[.]"

approved scope, and the use of personal information in violation of laws and regulations by [a]pps" which "ha[d] been a prominent issue, and a cause of grave concern for many [i]nternet users." It further explained certain Chinese data privacy laws that were then in effect:

> When collecting and using personal information, [a]pp operators shall strictly fulfill the responsibilities and obligations stipulated in the Cybersecurity Law, be responsible for the security of the personal information obtained, and take effective measures to strengthen the protection of personal information. App operators shall follow the principles of legality, legitimacy and necessity, and not collect personal information irrelevant to the services provided; when collecting personal information, display the rules for collecting and using personal information in an easy-to-understand way, and obtain the independent consent of the subjects of personal information; not force users to authorize by default, binding, stopping installation and use, etc.; and not collect and use personal information in violation of laws, regulations and agreements with users.

62.    The announcement went on to declare that "[p]unishment shall be imposed for the acts of coercive and excessive collection of personal information, collection and use of personal information without the consent of consumers and the agreement between both parties in violation of laws and regulations[.]"  These punishments included "ordering relevant [a]pp operators to make rectification within the time limit; making public disclosure of those failing to make rectification within the time limit; if the circumstances are serious, suspending relevant business, stopping business for rectifications, revoking relevant business permits or revoking business licenses according to law."

63.    As a result of the increased regulation, on November 28, 2019, the four government agencies jointly issued a notice entitled "Definition of Apps' Illegal and Irregular Collection and Use of Personal Information."  The agencies implemented this notice to reinforce the Chinese Cyber Security Law and aimed specifically at regulating the collection of information through mobile apps, including the 360 Jietiao app.

64.     This definition explicitly identified six violations that could be committed in the course of the collection and use of personal information by apps: (1) failure to publicize rules on information collection and use; (2) failure to specify the purpose, manner and scope of an app company's collection and use of personal information; (3) *failure to obtain users' consent before collecting and using personal information*; (4) *violating the principal of necessity and collecting personal information irrelevant to the services being provided*; (5) providing personal information to a third party without the information owner's consent; and (6) failure to provide the means to delete or revise personal information in accordance with laws, or failure to make available to consumers the means to file a complaint or submit a whistle-blower tip.  As the May 10 Bulletin explained, 360 DigiTech "collect[ed] personal information unrelated to the services provided, [and] collect[ed] and use[d] personal information without the user's consent," which were explicitly identified as violations in (3) and (4) of the above.

65.     Then in April 2020, China's Bank and Insurance Regulatory Commission ("CBIRC") promulgated "Preliminary Measures on Commercial Bank Internet Finance Administration."  These measures, aimed specifically at online finance companies such as 360 DigiTech, set forth requirements for online collection of users' personal data, including strengthened protections for consumers' personal information, and specific requirements for online finance companies related to the source, use, and storage of consumers' personal information.

66.     Further, in September 2020, CBIRC issued a "Notice on Strengthening the Supervision and Administration of Micro-loan Companies."  The notice, focused on personal loan companies such as 360 DigiTech, provided guidance on the standardization of customer information management, including the proper custody of legally obtained customer information.

21

It additionally prohibited the collection, storage, or use of a customer's data without a customer's authorization or consent.

67.    Finally, in March 2021, the Cyberspace Administration of China, the Ministry of Industry and Information Technology, the Ministry of Public Security, and the State Administration for Market Regulation jointly issued a notice entitled "Provisions on the scope of Necessary Personal Information for Common Types of Mobile Internet Applications." This notice provided guidance on what is officially considered necessary personal information as described in the "Definition of Apps' Illegal and Irregular Collection and Use of Personal Information" issued by the same four agencies in November 2019. For online lending apps, such as the 360 Jietiao app, the definition of necessary personal data was strictly limited to a users' name, phone number, certification number and type, the expiration date of their certification, and their bank card number.

68.    In the Company's 2019 Form 20-F, 360 DigiTech acknowledged the rules and regulations governing data collection and privacy under which it operated. For example, the Company stated:

> In recent years, PRC government authorities have enacted laws and regulations on internet use to protect personal information from any unauthorized disclosure. Under the Several Provisions on Regulating the Market Order of Internet Information Services, issued by the MIIT in December 2011 and effective as of March 2012, an internet information service provider may not collect any user personal information or provide any such information to third parties without the specific consent of the user. ***An internet information service provider must <u>expressly inform the users</u> of the method, content and purpose of the collection and processing of such user personal information, and may only collect such information <u>necessary for the provision of its services</u>***.

69.    By violating any of the above regulations, the Company was subject to severe penalties including criminal sanctions. For example, in 360 DigiTech's 2019 Form 20-F, the Company acknowledged that "[a]ny non-compliance" with any of these data privacy regulations would lead to "warnings, fines, investigations, lawsuits, confiscation of illegal gains, revocation

of licenses, cancellation of filings, closedown of websites or even criminal liabilities against us."

Accordingly, in order to continue to have access to the data upon which the Company relied, it

was critical that 360 DigiTech maintain compliance with all of these regulations.

70.    360 DigiTech acknowledged (and even touted) that the Company's compliance

with such regulations was crucial to its ongoing success and profitability.  For example, Defendant

Haisheng Wu stated during the Company's third quarter 2020 earnings call that "maintain[ing] the

highest standard of compliance in line with the latest regulations" was "critical for healthy and

sustainable development of our business."

71.    Similarly, according to 360 DigiTech's 2020 Form 20-F, "[e]nhancing the

recognition and reputation of our brand is critical to our business and competitiveness," and

"[f]actors that are vital to this objective include" the Company's ability to "effectively protect

personal information and privacy of borrowers."

**C.    360 DigiTech Violated Chinese Data Privacy Regulations by Over-Collecting Customers' Personal Information Without Consent**

72.    The above regulations acted both to define the scope of personal information that

360 DigiTech was allowed to collect from customers as well as to require the Company to gain

customer consent before collecting any personal information.  Indeed, according to the "Definition

of Apps' Illegal and Irregular Collection and Use of Personal Information" 360 DigiTech was

prohibited from "collecting personal information irrelevant to the services being provided."

Information considered necessary to an online lending app, such as the 360 Jietiao app, was strictly

limited to a users' name, phone number, certification number and type, the expiration date of their

certification, and their bank card number.

73.    Article 41 of the Cyber Security Law, the Definition of Apps' Illegal and Irregular

Collection and Use of Personal Information, and the Notice on Strengthening the Supervision and

Administration of Micro-loan Companies all required 360 DigiTech to gain consent from its customers before collecting any personal information.

74.     However, even though the Company acknowledged it was subject to these regulations and the severe penalties that it faced if found to violate any of these provisions— Defendants chose to ignore them.  Instead, Defendants flouted these regulations and collected personal information not necessary to the Company's lending business without customer consent. Critically, the Company admitted that its data collection practices violated Chinese data privacy regulations.  Specifically, on July 8, 2021, the last day of the Class Period, Sohu Business, a major Chinese business publication, reported that "the relevant person in charge [at 360 DigiTech]" *admitted* that the 360 Jietiao app was pulled from the market by regulators because of Defendants' "*illegal use of personal information*."

**D.     360 DigiTech Falsely Touted Compliance with Chinese Regulations**

75.     Throughout the Class Period, Defendants falsely stated that 360 DigiTech complied with all data privacy regulations governing the consumer lending industry.  Specifically, the Company misleadingly touted its compliance with Chinese regulations, particularly those concerning data privacy, as a competitive advantage over its peers.  Indeed, despite over-collecting customer data since the start of the Class Period, in violation of the Chinese regulations referenced above, Defendants continually represented that the Company's data collection practices conformed with all regulations.

76.     For example, on April 30, 2020, the first day of the Class Period, the Company filed its 2019 Form 20-F with the SEC.  In the 2019 Form 20-F, Defendants touted the Company's dedication to protecting customer data and assured investors that it always obtained adequate consent from customers before using their data, as required by multiple Chinese data privacy regulations, stating:

24

"*[w]e are dedicated to privacy protection of our borrowers* during our risk management process, and we ***adopt policies to make sure we <u>always</u> obtain users' consent for our use of data and enquire from other sources of their information***. We also obtain consent from our borrowers to use the data collected by 360 Group for risk management purposes at the registration stage."

77.    As the Class Period progressed, Defendants maintained this false story of 360 DigiTech's compliance with Chinese data privacy regulations.  For example, on May 28, 2020, the Company held an earnings call to discuss its financial results for the first quarter 2020 (the "May 28, 2020 Earnings Call").  On that call Defendant Haisheng Wu touted the Company's compliance with Chinese data privacy regulations, stating: "***[i]n terms of compliance, as a leading fintech platform in China, we have <u>always</u> adhered to the highest standard in compliance***."

78.    However, these and other statements touting the Company's compliance with Chinese data privacy regulation were false and misleading.  As the Company even conceded in a conversation with Sohu Business, a major Chinese business publication, where "the relevant person in charge [at 360 DigiTech]" admitted that "the removal was related to the ***<u>illegal</u> use of personal information*.**"  Thus, in reality, 360 DigiTech's standard of compliance was not the "highest"; in fact, it was not even adequate to satisfy the regulations that applied to its business. As Defendants touted the Company's compliance with Chinese data privacy regulations, they were aware or reckless in not knowing that 360 DigiTech was over-collecting user data without adequate customer consent, and thus was in violation of Chinese data privacy regulations and subject to regulatory action by the Chinese government, including the removal of the 360 Jietiao app from app stores.

79.    Throughout the Class Period, Defendants continued to reassure investors of 360 DigiTech's compliance with all Chinese data privacy regulations.  Indeed, Defendants doubled

down on this story, touting the Company's compliance as well as leading investors to believe that the Chinese government endorsed its compliance practices.

80.     On June 3, 2020, 360 DigiTech issued a press release touting that it had registered its 360 Jietiao app with the National Internet Finance Association of China ("NIFA"). The press release quoted Defendant Haisheng Wu who stated:

> Regulators are cracking down in order to further protect consumers and have put in place a series of rules to strengthen personal data protection. As a company with strong cyber security capabilities in our DNA, ***360 Finance places a high priority on providing robust data privacy protections and will never collect data without users' consent***. ***We have a strict code of conduct that guides our business operations and employee behaviors and we have a technology-driven infrastructure in place that secures our systems. We will spare no effort in safeguarding personal information***.

81.     Analysts were convinced by Defendants' powerful assurances. For example, on August 5, 2020, an analyst from CMB International Securities issued a report initiating coverage on 360 DigiTech. The report gave the Company an "outperform" rating, explaining that "360 Finance is our ***sector top pick***, given its comprehensive strength in client base, funding profile, risk management and ***regulatory compliance***."

82.     Defendants continued to tout the Company's compliance with Chinese regulations as a competitive advantage over its peers throughout the Class Period, even as the data privacy crackdown in China began to ramp up. For example, on November 19, 2020, 360 DigiTech held an earnings call to discuss the Company's third quarter of 2020 financial results. On that call Defendant Haisheng Wu stated that "[a]s a leading Fintech player, ***we have always ensured that we maintain the highest standard of compliance in line with the latest regulations***. This is critical for healthy and sustainable development of our business."

83.     Defendants again successfully convinced analysts, and the rest of the market, of this falsehood. For example, on March 16, 2021, Citi issued an analyst report giving the Company

a "Buy" rating, explaining that "[a]s we see *regulatory overhang as largely removed and QFIN as the key beneficiary of the regulatory scrutiny against big tech* . . . QFIN's valuation should continue to rerate and deserves a valuation premium over [its competitors] given its superior risk mgmt capability."

84.     Similarly, on March 17, 2021, Morgan Stanley issued a favorable analyst report concerning 360 DigiTech, rating the Company as "overweight."  That report explained "[w]e believe ~30% volume growth in 2021 will be supported by 1) more efficient client acquisition, backed by strong risk management capability via cooperation with more leading Internet platforms; . . . [and] 3) *reduced regulatory risk*."

85.     However, these and other statements describing the Company's compliance with Chinese data privacy regulations as an advantage over competitors (as set forth in Section V, *supra*) were materially false and misleading.  Contrary to Defendants' statements, rather than being a competitive advantage, 360 DigiTech's data collection practices violated Chinese data privacy regulations and subjected the Company to the removal of its core product, the 360 Jietiao app, from app stores, harming the Company's ability to sign up new borrowers and thereby stunting its ability to grow revenues.

86.     The existence of the data privacy regulations (and Defendants' so-called compliance with such regulations) in reality did not place 360 DigiTech at a competitive advantage but rather put the Company's revenues and ability to sign up new borrowers at risk.  Indeed, during the third quarter 2021, which encompasses the period during which the 360 Jietiao app was removed from and unavailable on app stores, the number of loans originated by 360 DigiTech's financial institution partners decreased by over one million when compared with the second quarter 2021.  Moreover, though 360 DigiTech had dozens of competitors, *the 360 Jietiao was the only*

*app removed from app stores*.  Accordingly, 360 DigiTech's lack of compliance actually put the Company at a distinct competitive disadvantage.

     **E.**     **Government Regulators Warn 360 DigiTech of its Non-Compliance**

     87.     In March 2021, Chinese regulators announced a new series of laws aimed at protecting customer's personal information from collection by mobile apps.  On March 12, 2021, Chinese regulators issued the "Provisions on the Scope of Necessary Personal Information for Common Types of Mobile Internet Applications."  Following this announcement came a flurry of regulatory activity as regulators began inspecting mobile app providers' compliance with Chinese data privacy laws.

     88.     Specifically, on the last day of the Class Period, July 8, 2021, 21st Century Business Herald, a major Chinese business publication, reported that on April 29, 2021, 360 DigiTech executives attended a meeting with Chinese financial regulators who warned them that 360 DigiTech was in violation of certain Chinese regulations governing the collection and use of borrowers' personal information and ordered by the regulators to bring the Company into compliance.

     89.     After the April 29 Meeting, the Chinese regulators issued seven "rectification requirements," including the mandate that 360 DigiTech "standardize the collection and use of personal information, marketing and publicity activities and format contracts."  Indeed, according to 21st Century Business Herald, "[a]lthough all of the seven rectification requirements are important, there are two main aspects that have attracted the most attention: business model and *protection of personal information*."  The fact that the Chinese regulators imposed these rectification requirements meant that the Company was in violation of certain provisions of Chinese law and would need to submit a plan to Chinese regulators showing how the Company would bring the 360 Jietiao app into compliance.

**F.    The Truth Begins to Emerge as Chinese Regulators Reveal 360 DigiTech's Violations and Ultimately Remove the 360 Jietiao App from App Stores**

90.    Then, on May 10, 2021, the Office of the Central Cyberspace Affairs Commission, a Chinese regulatory body responsible for managing internet-related issues, issued a public bulletin containing a list of internet finance apps that illegally collected personal information.  The 360 Jietiao app—360 DigiTech's primary revenue generating app—was included on the list.  Chinese authorities released the May 10 Bulletin after the Cyberspace Administration of China conducted inspections of popular online lending apps in response to complaints from the Chinese public, which alleged that 360 DigiTech infringed its users' privacy by illegally collecting their personal information.

91.    The May 10 Bulletin explained the 360 Jietiao app was found to have "[v]iolate[d] the necessary principles and the requirements of *Regulations on the Scope of Necessary Personal Information for Common Mobile Internet Applications*, collect[ed] personal information unrelated to the services provided, [and] collect[ed] and use[d] personal information without the user's consent."  The May 10 Bulletin then ordered that the Company rectify the 360 Jietiao app and bring it into compliance with all applicable Chinese data privacy regulations.

92.    The market reacted negatively to this news causing 360 DigiTech's stock price to drop significantly.  By the time the market closed on May 10, 2021, the Company's stock had dropped $1.15 per share, or 4.98%, to close at $22.52.

93.    However, investors believed that 360 DigiTech still had time to rectify its wrongdoing because the May 10 Bulletin required the Company to "complete the rectification within 15 working days from the date of issuance of this notification and report their rectification results to our office." This meant that if 360 DigiTech brought the 360 Jietiao app into compliance, it would likely face no regulatory action.

94.     Further, even after being warned of their non-compliance by the Chinese regulatory authorities, which the Company acknowledged had the power to impose severe sanctions, including the removal of the 360 Jietiao app, Defendants tried to convince investors that the regulators' scrutiny was actually a good development. For example, on May 27, 2021, 360 DigiTech issued a press release announcing its financial results for the first quarter 2021 (the "May 27, 2021 Press Release").  The press release quoted Defendant Haisheng Wu, who stated:

> We are very excited to start 2021 with a big bang! As macro economy in China continues to recover, we have experienced robust customer demand and further improvement in asset quality. We also believe recent regulatory actions will ultimately provide additional regulatory clarity for the leading platforms like us and pave the way for a healthy and consolidated industry. As our strategic initiatives achieved outstanding results across our operations, we further position ourselves to become one of the premium digital platforms in the long run. We feel more confident and thrilled than ever.

95.     Defendant Haisheng Wu continued to repeat this narrative later that same day when 360 DigiTech held an earnings call discussing the Company's first quarter 2021 financial results (the "May 27, 2021 Earnings Call").  During that call Defendant Haisheng Wu stated:

> As you may know, we were among the 13 major FinTech internet platforms that the regulator invited to meet recently. At the meeting, the regulator acknowledged the importance of our role in improving the efficiency of financial service, providing service to our demand and reducing transaction costs. We believe the meeting was a necessary step to apply fair and balanced regulatory supervision to market participants and promote the healthy development of the platform economy.

96.     Critically, Defendant Haisheng Wu then doubled down on this statement, by misleadingly downplaying the significance of the Company's non-compliance, and assuring investors that the Company would be—and had been—able to meet any regulatory requirements, thereby giving investors the impression that they had already been able to rectify the issues identified by Chinese regulators despite knowing the opposite was true:

> Strengthening supervision of the leading players will increase clarity to the regulatory direction of the industry, reduce regulatory overhead, and promote a

30

healthy and more consolidated market space. Compared to the other FinTech company at the meeting, our business models are relatively simple and straightforward. ***We have consistently held our operations to the highest of compliance standards. Therefore, we are very confident we can meet any regulatory requirements applied to this industry***. As the regulatory framework becomes more clear, we believe that leading FinTech firms like ourselves will embrace a historical era of growth.

97.    Defendants' reassurance continued to mislead investors regarding the Company's violations of Chinese data privacy regulations, and thus the market had no idea that the 360 Jietiao app was still not in compliance with Chinese data privacy regulations and would soon be removed from app stores.

**G.    The Full Truth is Revealed When the 360 Jietiao App is Pulled from App Stores For Over-Collecting Personal Data**

98.    Just over a month later, on July 8, 2021, the Chinese regulators removed the 360 Jietiao app from most major app stores within China, including the Android app store and 360 Group's app store.  As a result, potential borrowers were no longer able to download the app and could not apply for a loan and the Company could no longer generate income from new customers.

99.    The bombshell news was widely reported within the U.S. and China.  For example, on July 8, 2021, 21st Century Business Herald, a major business publication within China, reported that a 360 DigiTech spokesperson confirmed that the 360 Jietiao app was removed from app stores. The report explained that at the April 29 Meeting, Chinese regulators required 360 DigiTech to submit a "rectification plan" to fix certain non-complaint portions of its app.

100.    That same day, Sohu Business, another major Chinese business publication, further reported that the 360 Jietiao app had been removed from "mainstream application platforms such as Tencent App Store, Huawei App Store, Xiaomi App Store and 360 Mobile Assistant." According to the report, "the relevant person in charge [at 360 DigiTech]" admitted that "***the***

*removal was related to the __illegal__ use of personal information*."  Indeed, though 360 DigiTech had dozens of competitors, *the 360 Jietiao app was the only app removed from app stores*.

101.    News reports about the 360 Jietiao app's removal from app stores were widely distributed in the U.S.  For instance, on July 8, 2021, the financial news website, Seeking Alpha, posted an article entitled "360 DigiTech stock drops 25% after talk of 360 [Jietiao] app removal." The post linked to the 21st Century Business Herald article and noted that the "app[] w[as] removed from major app stores as Chinese regulators investigate their customer data protection practices."

102.    This news stunned the market causing 360 DigiTech's stock price to drop precipitously.  By the time the market closed on July 8, 2021, the Company's stock dropped $7.12 per share, or *21.48%*, to close at $26.02.

103.    On July 9, 2021, Seeking Alpha released another post confirming that the 360 Jietiao app had been removed from app stores because 360 DigiTech had been improperly "over-collecting and using personal information."  The post quoted a spokesperson from 360 DigiTech who stated "[c]urrently, we have submitted a new rectification plan and stepped up the whole process."

## V.    DEFENDANTS' FALSE AND MISLEADING STATEMENTS

104.    As alleged herein, such statements artificially inflated or maintained the price of 360 DigiTech's publicly traded ADSs and operated as a fraud or deceit on all persons and entities that purchased ADSs during the Class Period.

105.    Throughout the Class Period, Defendants made a series of misrepresentations concerning 360 DigiTech's compliance with Chinese privacy data regulations impacting the Chinese consumer lending industry.  Specifically, Defendants' misrepresentations and omissions concerned 360 DigiTech's continued violations of those regulations, including that (i) the

Company was over-collecting consumer data in violation of various data privacy regulations; and (ii) as a result, the Company's core lending app, 360 Jietiao, was subject to being removed from major app stores within China.

**A.    April 30, 2020 – Form 20-F**

106.    The Class Period begins on April 30, 2020, when 360 DigiTech filed its 2019 Form 20-F, which was signed by Defendant Haisheng Wu.  In the 2019 Form 20-F, 360 DigiTech touted its dedication to protecting customer data and assured the market that it always obtained adequate consent from customers before using their data[9]:

> ***We are dedicated to privacy protection of our borrowers during our risk management process, and we adopt policies to make sure we <u>always</u> obtain users' consent for our use of data and enquire from other sources of their information***. We also obtain consent from our borrowers to use the data collected by 360 Group for risk management purposes at the registration stage*. All 360 Group's data we relied on for risk management purposes is provided on a machine-readable-only basis, without subject to any human review or intervention. We can only access the output of such credit analysis to eliminate the possibility of data leakage or unnecessary privacy invasion as much as possible. We also rely on our technologies and internal policies to prevent our systems from being infiltrated or exploited maliciously for data theft purpose.

107.    In addition to the reasons set forth in Sections IV.C-D, and IV.F, *supra*, Defendants' above statement was materially false and misleading and failed to disclose material facts at the time they were made because, unknown to investors, throughout the Class Period, 360 DigiTech violated the same Chinese data privacy regulations, referenced in Section IV.B, *supra*, which it acknowledged applied to its business and the violation of which subjected the Company to severe penalties including the removal of the 360 Jietiao app.  Indeed, unbeknownst to investors, as the Company admitted at the end of the Class Period, the 360 Jietiao app was removed from

---

[9] Lead Plaintiff alleges that the statements highlighted in bold, italics, and/or underlining within this section and Section VI, *infra*, were materially false and misleading and/or omitted to disclose material information of which Defendants were aware or were reckless in not knowing.

app stores by Chinese regulators due to the Company's "illegal use of personal information." Specifically, as alleged herein, contrary to Defendants' public statements, 360 DigiTech over-collected customer's personal information without consent.

### B.    May 28, 2020 – 1Q 2020 Earnings Call

108.    On May 28, 2020, 360 DigiTech held an earnings call discussing the Company's first quarter 2020 financial results (the "May 28, 2020 Earnings Call").  During that call Defendant Haisheng Wu touted the Company's compliance with Chinese regulations, stating:

> ***In terms of compliance, as a leading fintech platform in China, we have <u>always adhered</u> to the highest standard in compliance***. Together with BAT, JD, Lufax and other platforms, we were among the first batch of companies to receive approval to file our mobile finance app with the National Internet Finance Association of China. Among those on the list, for the mobile app, we were one of the few platforms that is neither a financial institution nor a payment company. Moreover, our 360 Jietiao app has received a Level 3 testing certificate from China's National Computer Virus Emergency Response Center, the highest level issued by the institution. In particular, our app, received a Level 3 rating for both privacy policy and data security.

109.    In addition to the reasons set forth in ¶ 107, Defendants' statement above was materially false and misleading because contrary to Defendants' statement, rather than being a competitive advantage, 360 DigiTech's data collection practices violated Chinese data privacy regulations and subjected the Company to the removal of its core product, the 360 Jietiao app, from app stores, harming the Company's ability to sign up new borrowers and thereby stunting its revenues.  Contrary to Defendants' representations, the existence of the data privacy regulations (and Defendants' so-called compliance with such regulations) did not place 360 DigiTech at a competitive advantage as the Company's ability to sign up new borrowers, and thus its ability to generate revenue from new borrowers, were adversely impacted—metrics that are commonly used to compare the competitive positions of companies in the same industry.  Indeed, though 360 DigiTech had dozens of competitors, the 360 Jietiao app was the only app removed from app

stores.  Accordingly, 360 DigiTech's compliance (or lack thereof) actually put the Company at a distinct competitive disadvantage.

### C.    June 2, 2020 – Press Release

110.    On June 2, 2020, 360 DigiTech issued a press release titled "360 Finance Receives App Security and Information Security Certifications from China's CVERC" (the "June 2, 2020 Press Release").  In the press release, the Company stated that "***360 Finance has placed the upmost [sic] importance on protecting user information and data since its establishment and is widely recognized for its cyber security capabilities which are part of its core DNA***."

111.    The Company continued to tout in the June 2, 2020 Press Release its ongoing compliance with Chinese data privacy regulations, stating:

> In recent years, personal data security has been increasingly scrutinized by national regulatory bodies in China. Since 2019, Chinese authorities have cracked down on illegal collection and misuse of personal information by internet-related companies. As a result, hundreds of app operators have been fined, issued rectification orders, or warned for their lack of privacy protections and failure to explicitly outline the scope of personal information use or excessive data collection in their apps, among other practices. ***Given the ongoing regulatory environment, the certifications granted to 360 Finance recognize the Company's core competency in data privacy and security technology and further consolidate the Company's competitive advantage in terms of regulatory compliance***.

112.    Defendants' statement above was materially false and misleading for the same reasons set forth in ¶¶ 107 and 109.

### D.    June 3, 2020 – Press Release

113.    On June 3, 2020, 360 DigiTech issued a press release titled "360 Finance Among First Wave of Companies to Register its Financial Services App with China's NIFA" (the "June 3, 2020 Press Release").  The press release quoted Defendant Haisheng Wu who stated:

> Regulators are cracking down in order to further protect consumers and have put in place a series of rules to strengthen personal data protection. ***As a company with strong cyber security capabilities in our DNA, 360 Finance places a high priority on providing robust data privacy protections and <u>will never collect data without</u>***

35

*users' consent. We have a strict code of conduct that guides our business operations and employee behaviors and we have a technology-driven infrastructure in place that secures our systems. We will spare no effort in safeguarding personal information*.

114.    Defendants' statement above was materially false and misleading for the same reasons set forth in ¶¶ 107 and 109.

### E.    November 19, 2020 –3Q 2020 Earnings Call

115.    On November 19, 2020, 360 DigiTech held an earnings call discussing the Company's third quarter 2020 financial results (the "November 19, 2020 Earnings Call"). During that call Defendant Haisheng Wu touted the Company's compliance with Chinese data privacy regulations and acknowledged that the 360 DigiTech's continued viability hinged on its ability to do so, stating that "*[a]s a leading Fintech player, we have always ensured that we maintain the highest standard of compliance in line with the latest regulations*. This is critical for healthy and sustainable development of our business."

116.    Defendants' statement above was materially false and misleading for the same reasons set forth in ¶¶ 107 and 109.

### F.    April 21, 2021 – Form 20-F

117.    On April 21, 2021, 360 DigiTech filed its 2020 Form 20-F, which was signed by Defendant Haisheng Wu. In the 2020 Form 20-F, 360 Defendants again falsely touted the Company's dedication to protecting customer data and misleadingly assured the market of its continued compliance with Chinese Fintech and data privacy regulations:

> *We are dedicated to privacy protection of our borrowers during our risk management process, and we adopt policies to make sure we always obtain users' consent for our use of their data and enquires made to other sources of their information*. We also obtain consent from our borrowers to use the data collected by 360 Group for risk management purposes at the registration stage. All 360 Group's data we relied on for risk management purposes is provided on a machine-readable-only basis, without subject to any human review or intervention. We can only access the output of such credit analysis to eliminate the possibility of data

36

leakage or unnecessary privacy invasion as much as possible. We also rely on our technologies and internal policies to prevent our systems from being infiltrated or exploited maliciously for data theft purposes.

118.    In the 2020 Form 20-F, the Company also touted its data collection and analysis as a competitive advantage over its peers, stating that "*[l]arge volumes of high-quality data is a <u>key</u> <u>factor</u> differentiating online finance platforms. We have gained a considerable competitive advantage with our proprietary data collection, processing, and analyzing capabilities*."

119.    Defendants' statements above were materially false and misleading for the same reasons set forth in ¶¶ 107 and 109.

## VI.    FACTS ABOUT THE IMPACT OF DEFENDANTS' ILLEGAL CONDUCT ARE REVEALED

### A.    Chinese Regulators Warned 360 DigiTech of its Violations on May 10, 2021, but Defendants Ignored These Warnings and Falsely Reassured Investors of the Company's Compliance

120.    As set forth in Section VII, *infra*, the full extent of Defendants' fraud was revealed through the disclosure of new information about 360 DigiTech's violations of Chinese Fintech and data privacy regulations and the effect they would have on the Company.

121.    On May 10, 2021, the Office of the Central Cyberspace Affairs Commission, a Chinese regulatory body responsible for managing internet-related issues, issued a public bulletin containing a list of internet finance apps that were engaged in the illegal collection of personal information.    The 360 Jietiao app—360 DigiTech's primary revenue generating app—was included on the list.    Chinese authorities released the May 10 Bulletin after the Cyberspace Administration of China conducted inspections of popular online lending apps in response to complaints from the Chinese public, which alleged that 360 DigiTech infringed its users' privacy by illegally collecting their personal information.

37

122.    The May 10 Bulletin explained that the 360 Jietiao app "[v]iolate[d] the necessary principles and the requirements of *Regulations on the Scope of Necessary Personal Information for Common Mobile Internet Applications*, collect[ed] personal information unrelated to the services provided, [and] collect[ed] and use[d] personal information without the user's consent." The May 10 Bulletin then ordered that the Company rectify the 360 Jietiao app and bring it into compliance with all applicable Chinese data privacy regulations.

123.    The market reacted negatively to this news and 360 DigiTech's stock price dropped significantly.  By the time the market closed on May 10, 2021, the Company's stock had dropped $1.15 per share, or 4.98%, to close at $22.52.

124.    However, even after being warned of their non-compliance, on the Company's May 27, 2021 Earnings Call, Defendant Haisheng Wu downplayed the importance of the April 29 Meeting and 360 DigiTech's compliance with Chinese data privacy regulations and assured investors that the Company would be able to meet any regulatory requirements despite knowing the opposite was true stating:

> Strengthening supervision of the leading players will increase clarity to the regulatory direction of the industry, reduce regulatory overhead, and promote a healthy and more consolidated market space. Compared to the other FinTech company at the meeting, our business models are relatively simple and straightforward. ***We have consistently held our operations to the highest of compliance standards. Therefore, we are very confident we can meet any regulatory requirements applied to this industry***. As the regulatory framework becomes more clear, we believe that leading FinTech firms like ourselves will embrace a historical era of growth.

125.    In addition to the reasons set forth in ¶ 107 and ¶ 109, Defendants' above statement was false and misleading because, while Defendant Haisheng Wu acknowledged the Company's participation in the April 29 Meeting, he made no mention of that the 360 Jietiao app was still not in compliance with Chinese data privacy regulations.  Moreover, the May 10 Bulletin required the

Company to "complete the rectification within 15 working days from the date of issuance of this notification and report their rectification results to our office." This meant that if 360 DigiTech brought the 360 Jietiao app into compliance, there would be no regulatory action.

126.    Critically, by stating that "*[w]e have consistently held our operations to the highest of compliance standards*" and "*we are very confident we can meet any regulatory requirements applied to this industry*," only 17 days after the May 10 Bulletin, Defendant Haisheng Wu gave investors the false impression that the Company was operating in compliance with all regulations. However, slightly over a month later, on July 8, 2021, the last day of the Class Period, Sohu Business, a major Chinese business publication, reported that "the relevant person in charge [at 360 DigiTech]" admitted that the 360 Jietiao app was pulled from the market by regulators because of Defendants' "illegal use of personal information."

127.    Moreover, while Defendant Haisheng Wu acknowledged that the Company attended the April 29 Meeting, he omitted that at the April 29 Meeting, the Chinese regulators warned the Company of its violations of Chinese data privacy regulations and required the Company to submit a rectification plan to show how the Company would bring its operations into compliance. By failing to disclose this material information to investors, Defendant Haisheng Wu misrepresented the status of the Company's compliance and concealed that the 360 Jietiao app was still over-collecting data and would likely be removed from app stores.

**B.    The Full Truth was Revealed When Chinese Regulators Removed the 360 Jietiao App from App Stores**

128.    Then on July 8, 2021, 360 DigiTech's self-described "core product," the 360 Jietiao app, was removed from major mobile app stores within China. As a result, potential customers could no longer download the app, severely restricting the Company's ability to generate loans to new customers.

129.    At the same time, news outlets within China and the U.S. began reporting on the removal of the 360 Jietiao app, linking the removal to violations by 360 DigiTech of Chinese regulations governing the collection and use of customers' personal information, of which Defendants were notified at the April 29 Meeting and in the May 10 Bulletin.  For example, 21st Century Business Herald, a major business publication within China reported that it "exclusively learned that the [360 Jietiao app], a core product under 360 [DigiTech], has been removed from the shelf.  The reason for that may be related to the fact that financial regulatory authorities including the People's Bank of China interviewed 13 Internet financial platforms and asked for rectification on April 29th of this year."

130.    Similarly, Sohu Business, another major Chinese business publication, further reported that the 360 Jietiao app had been removed from "mainstream application platforms such as Tencent App Store, Huawei App Store, Xiaomi App Store and 360 Mobile Assistant."  The report further explained that "the relevant person in charge [at 360 DigiTech]" admitted that the removal was "related to the illegal use of personal information."  He also stated that the Company "submitted a new rectification plan and stepped-up rectification."

131.    After learning of 360 DigiTech's violations and the removal of the 360 Jietiao app, the market reacted severely and the price of 360 DigiTech ADSs declined by $7.12 per share, or *21.48%*, to close at $26.02 on July 8, 2021.

## VII.    LOSS CAUSATION

132.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of 360 DigiTech ADSs and operated as a fraud or deceit on Class Period purchasers of 360 DigiTech ADSs by failing to disclose and misrepresenting the adverse facts detailed herein.

133.     Class members unknowingly and in reliance upon Defendants' materially false or misleading statements and/or omissions purchased 360 DigiTech ADSs at artificially inflated prices.  But for Defendants' misrepresentations, omissions, and fraudulent scheme, Lead Plaintiff and other Class members would not have purchased 360 DigiTech ADSs at the artificially inflated prices at which it traded during the Class Period.

134.     The truth regarding Defendants' fraud was revealed in a series of corrective disclosures and/or materializations of concealed risk that occurred between May 10, 2021 and July 8, 2021.  During this time, the price of 360 DigiTech ADSs fell precipitously as the artificial inflation caused by Defendants' unlawful conduct exited 360 DigiTech ADSs.  It was not until the corrective disclosure and/or materialization of concealed risk on July 8, 2021 that the full truth was known to the market, such that there was no longer any artificial inflation in the price of 360 DigiTech ADSs attributable to the fraud.

135.     The decline in the price of 360 DigiTech ADSs during this period is directly attributable to the market absorbing information that corrected and/or reflected the materialization of risks concealed by the Defendants' material misrepresentations or omissions.

136.     As a result of their purchases of 360 DigiTech ADSs during the Class Period, Lead Plaintiff and the other Class members suffered economic loss (*i.e.*, damages) under the federal securities laws.  Defendants' materially false and misleading statements had the intended effect and caused 360 DigiTech ADSs to trade at artificially inflated levels throughout the Class Period, reaching as high as $45.00 per share on June 17, 2021.

137.     By concealing from investors the adverse facts detailed herein, Defendants presented a false and misleading picture of 360 DigiTech's business.  As the truth about the Company and the extent of the fraud was revealed to the market, the price of 360 DigiTech ADSs

fell significantly. This decline removed the inflation from the price of 360 DigiTech ADSs, causing real economic loss to investors who had purchased 360 DigiTech ADSs during the Class Period.

A.    **May 10, 2021 – First Partial Corrective Disclosure/Materialization of the Risk**

138.    On May 10, 2021 the relevant truth and foreseeable risks concealed by Defendants' misconduct and their false representations and omissions during the Class Period were partially revealed and/or materialized in connection with the May 10 Bulletin, which revealed for the first time that the 360 Jietiao app "[v]iolate[d] the necessary principles and the requirements of *Regulations on the Scope of Necessary Personal Information for Common Mobile Internet Applications*, collect[ed] personal information unrelated to the services provided, [and] collect[ed] and use[d] personal information without the user's consent."

139.    The May 10, 2021 disclosure that 360 DigiTech had engaged in data collection practices that violated Chinese data privacy regulations and news related thereto was a foreseeable consequence of, and within the zone of risk concealed by, Defendants' representation and omissions concerning the Company' compliance with Chinese data privacy regulations. Moreover, the May 10, 2021 disclosure revealed new information that Defendants' misstatements, omissions, and fraudulent course of conduct previously concealed and/or was obscured by Defendants' prior misstatements and omissions regarding the Company's competitive advantage over its peers as a result of its superior compliance. This disclosure partially revealed some of the relevant truth concealed and/or obscured by Defendants' prior misstatements and omissions touting the Company's competitive advantage.

140.    As a direct and proximate result of this partial corrective disclosure and/or materializations of foreseeable risk concealed by Defendants' fraud, on May 10, 2021, the Company's ADS price dropped $1.15 per share, or 4.98%, to close at $22.52.

141.    However, despite this partial disclosure of adverse news, which removed some of the artificial inflation in 360 DigiTech's ADS price, its ADS price remained artificially inflated after this announcement as Defendants knew but failed to disclose, or deliberately disregarded, that the Company was not in Compliance with Chinese data privacy regulations.

142.    Further, the Company's ADS price remained artificially inflated even after the May 10 Bulletin was released as Defendants falsely reassured investors regarding the Company's compliance, leading them to believe that the Company had fixed the issues outlined in the May 10 Bulletin when it in fact had not.  Because the May 10 Bulletin required the Company to "complete the rectification within 15 working days from the date of issuance of this notification and report their rectification results to our office," if 360 DigiTech brought the 360 Jietiao app into compliance, there would be no regulatory action.

143.    On May 27, 2021, only two days after the end of the 15 day rectification period, Defendant Haisheng misleadingly reassured investors that "*[w]e have consistently held our operations to the highest of compliance standards*."  These statements misled investors about the Company's state of compliance and left them in the dark regarding any regulatory action as a result of the Company's violations.  As a result, the Company's ADS price continued to trade at artificially inflated prices.

   **B.    July 8, 2021 – Final Corrective Disclosure/Materialization of the Risk**

144.    On July 8, 2021, the relevant truth and foreseeable risks concealed by Defendants' misconduct and their false representations and omissions during the Class Period were fully revealed and/or materialized when the 360 Jietiao app was removed from most major mobile app

stores within China, including the Android app store, 360 Group's app store, Tencent app bao, Huawei app market, and Xiaomi app market.

145.    This news was widely reported within the U.S. and China.  For example, on July 8, 2021, 21st Century Business Herald, a major business publication within China reported that "the [360 Jietiao app], a core product under 360 [DigiTech], has been removed from [app stores].  The reason for that may be related to the fact that financial regulatory authorities including the People's Bank of China interviewed 13 Internet financial platforms and asked for rectification on April 29th of this year."  The report explained that at the April 29 Meeting, Chinese regulators required 360 DigiTech to submit "rectification plans" to fix certain non-compliant portions of their apps.  The report further explained that while the regulators issued seven "rectification requirements," one of the regulators' main concerns was protecting consumers' personal information.

146.    Similarly, on the same day, July 8, 2021, Sohu Business, another major Chinese business publication, further reported that the 360 Jietiao app had been removed from "mainstream application platforms such as Tencent App Store, Huawei App Store, Xiaomi App Store and 360 Mobile Assistant."  The report further explained that "the relevant person in charge [at 360 DigiTech]" admitted that the removal was "related to the illegal use of personal information."  He also stated that the Company "submitted a new rectification plan and stepped-up rectification."

147.    These reports were widely distributed within the U.S. through certain U.S. based news publications and social media posts.  For instance, Seeking Alpha, a financial news website, posted an article entitled "360 DigiTech stock drops 25% after talk of 360 [Jietiao] app removal." The post linked the 21st Century Business Herald article and noted that the "app[] w[as] removed from major app stores as PRC regulators investigate their customer data protection practices."

148.    The July 8, 2021 removal of the 360 Jietiao app, and the related news coverage identifying 360 DigiTech's over-collection of customers' personal data as the reason for that removal, was a foreseeable consequence of, and within the zone of the risk concealed by, the Defendants' misrepresentations and omissions concerning the Company's compliance with Chinese data privacy regulations and competitive advantage over its competitors as a result thereof.

149.    Moreover, the July 8, 2021 disclosures revealed new information that Defendants' misstatements, omissions, and fraudulent course of conduct previously concealed and/or obscured from the market.  The removal of the 360 Jietiao app and accompanying reports revealed the relevant truth concealed and/or obscured by Defendants' prior misstatements and omissions touting the Company's compliance with Chinese data privacy regulations, including the Company's failure to (i) "always obtain users' consent for [360 DigiTech's] use of [their] data" and (ii) "always adhere[] to the highest standard in compliance," as Defendants claimed.  Instead, the removal of the 360 Jietiao app and accompanying reports revealed that 360 DigiTech was actively violating Chinese privacy regulations in order improperly to gather personal data.

150.    As a direct and proximate result of this corrective disclosure and/or materialization of the foreseeable risks concealed by Defendants' fraud, the price of 360 DigiTech ADSs declined by 7.12 per share, or *21.48%*, to close at $26.02 on July 8, 2021.

151.    The market for 360 DigiTech ADSs was open, well-developed, and efficient at all relevant times, with average daily trading volume of approximately 2,047,886 during the Class Period.  As a result of Defendants' misstatements and material omissions, as alleged herein, 360 DigiTech ADSs traded at artificially inflated prices.  Lead Plaintiff and other Class members

purchased 360 DigiTech ADSs relying upon the integrity of the market relating to 360 DigiTech ADSs and suffered economic losses as a result thereof.

152. The decline in 360 DigiTech's ADS price on July 8, 2021 was a direct result of the nature and extent of Defendants' prior misstatements and omissions being revealed to investors. The timing and magnitude of the 360 DigiTech ADS price decline evidences the impact Defendants' statements had on the Company's ADS price during the Class Period and negate any inference that the loss suffered by Lead Plaintiff and other Class members was caused by changed market conditions or macroeconomic, industry, or Company-specific factors unrelated to Defendants' fraudulent conduct.

## VIII.    ADDITIONAL INDICIA OF SCIENTER

153. Defendants were active and culpable participants in the fraud, as evidenced by their knowing and reckless issuance and/or ultimate authority over 360 DigiTech's and the Individual Defendants' materially false or misleading statements and omissions. The Individual Defendants acted with scienter in that they knew or recklessly disregarded that the public statements more specifically set forth in Section V, *supra*, were materially false or misleading when made, and knowingly or recklessly participated or acquiesced in the issuance or dissemination of such statements as primary violators of the federal securities laws.  In addition to the numerous allegations above setting forth Defendants' knowledge of their violations of data privacy regulations and inability to safeguard the data entrusted with 360 DigiTech in connection with the Company's core product, 360 Jietiao, alleged above, Defendants' scienter is further evidenced by the following facts.

A.    **Data Privacy Regulations and the 360 Jietiao App Were Critical to 360 DigiTech's Core Operations, which Supports a Strong Inference of Scienter**

154.    The Individual Defendants' knowledge of 360 DigiTech's data privacy violations in connection with the 360 Jietiao app can be inferred because these facts were critical to 360 DigiTech's core operations.  Indeed, Mandy Dong, 360 DigiTech's Investor Relations Director, explicitly told investors during the May 27, 2021, Q1 2020 earnings call that 360 Jietiao was the Company's "***core product***."  Analysts, such as Citi Research, understood that 360 Jietiao was 360 DigiTech's "core product."  It was thus critical for Defendants to ensure that the Company's "core product," the 360 Jietiao app, complied with applicable data privacy laws because failing to comply with such regulations jeopardized the Company's ability to continue offering services from that app, as was the case here.

155.    Moreover, Defendants emphasized during the Class Period the importance that complying with the data privacy regulations was to the Company, supporting the fact that compliance with relevant regulations was critical to the Company's success.  For example, Defendant Haisheng Wu himself stated during the November 19, 2020 Earnings Call that "maintain[ing] the highest standard of compliance in line with the latest regulations" was "***critical*** for healthy and sustainable development of our business."  Similarly, according to 360 DigiTech's 2020 Form 20-F, "[e]nhancing the recognition and reputation of our brand is ***critical*** to our business and competitiveness," and "[f]actors that are ***vital*** to this objective include" the Company's ability to "effectively protect ***personal information and privacy of borrowers***."

156.    Likewise, as Defendants touted in their SEC filings, 360 Digitech had "placed the upmost [sic] importance on protecting user information and data since its establishment and is widely recognized for its cyber security capabilities which are part of [the Company's] core DNA." Defendants similarly explained that the Company "places a high priority on providing robust data

privacy protections and will never collect data without users' consent," and that they "will spare no effort in safeguarding personal information."

157.    Defendants also acknowledged the material impact that not complying with such privacy laws would have on its business.  For example, Defendants explained in the Company's 2020 Form 20-F: "If any of our business practices are deemed to violate any PRC laws or regulations, our business, financial condition and results of operations would be materially and adversely affected."  They similarly acknowledged that "[t]o the extent that any aspect of our products or services is deemed to be non-compliant with any requirements of the relevant PRC laws and regulations . . . our business operations may be negatively impacted."

158.    Because 360 DigiTech faced severe adverse consequences if it did not comply with applicable privacy regulations, Defendants' compliance with these laws was thus vital to 360 DigiTech's continued viability.  Indeed, according to the Company's 2020 Form 20-F, in 2020 capital heavy and capital light lending accounted 68% and 13.5%, respectively, of the Company's total revenues, meaning that 81.5% of the Company's revenues relied on the Company's ability to comply with Chinese data privacy regulations.

159.    Defendants repeated false and misleading statements about their compliance with data privacy regulations concerned a core operation of 360 DigiTech financial services business. Therefore, the knowledge that 360 DigiTech violated data privacy regulations can be imputed to the Individual Defendants.

**B.      Defendants' Knowledge of the Chinese Government's Heightened Scrutiny on Fintech Companies' Data Collection Procedures Supports a Strong Inference of Scienter**

160.    Beginning in 2011, the Chinese government has increased the level of scrutiny on Chinese companies that collect personal data by apps.  For example, in 2011, the MIIT promulgated "Provisions on Standardizing the Internet Information Service Market," which

prohibits internet service providers from collecting personally identifiable information or providing such information to third parties without the users' consent. On November 7, 2016, the Chinese government promulgated the Cyber Security Law, which likewise requires companies like 360 DigiTech to adhere to heightened regulations surrounding collecting and using personal information from customers.

161.    On January 25, 2019, the Cyberspace Administration of China, the Ministry of Industry and Information Technology, the Ministry of Public Security, and the State Administration of Market Regulation jointly issued a "Notice on a Special Crackdown on Apps' Illegal and Irregular Collection and Use of Personal Information," similarly promulgating a series of rules governing the collection of personal information. On November 28, 2019, these four government agencies jointly issued a notice entitled "Definition of Apps' Illegal and Irregular Collection and Use of Personal Information" to reinforce the Chinese Cyber Security Law and regulate the collection of information through mobile apps, including the 360 Jietiao app.

162.    In April 2020, CBIRC promulgated "Preliminary Measures on Commercial Bank Internet Finance Administration," which includes specific requirements for online finance companies, such as 360 DigiTech, related to the source, use, and storage of consumers' personal information. In September 2020, CBIRC issued a "Notice on Strengthening the Supervision and Administration of Micro-loan Companies," which prohibits small lenders like 360 DigiTech from collecting, storing, or using a customer's data without a customer's authorization or consent. Finally, in March 2021, the Cyberspace Administration of China, the Ministry of Industry and Information Technology, the Ministry of Public Security, and the State Administration of Market Regulation jointly issued a notice entitled "Provisions on the scope of Necessary Personal Information for Common Types of Mobile Internet Applications," which provides guidance on

what is officially considered necessary personal information as described in the "Definition of Apps' Illegal and Irregular Collection and Use of Personal Information" issued by the same four agencies in November 2019. *See* Section IV.B (discussing in more detail the regulations introduced since 2011).

163.   This increased scrutiny was widely known in the industry and 360 DigiTech specifically mention it in its June 2, 2020 Press Release, stating: "In recent years, personal data security has been increasingly scrutinized by national regulatory bodies in China."

164.   In fact, 360 DigiTech's June 2, 2020 Press Release further acknowledged that, "[s]ince 2019, Chinese authorities have cracked down on illegal collection and misuse of personal information by internet-related companies.  As a result, hundreds of app operators have been fined, issued rectification orders, or warned for their lack of privacy protections and failure to explicitly outline the scope of personal information use or excessive data collection in their apps, among other practices."

165.   Similarly, as Defendants themselves explained in 360 DigiTech's 2020 Form 20-F, the China's Ministry of Public Security implemented the "Special Crackdown on the Illegal Collection and Misuse of Personal Information by Apps" initiative in January 2019 to ensure that companies comply with app privacy and data security regulations.

166.   As a result of this well-known trend that the Chinese regulators were focusing on Chinese companies' collection of private data, Defendants knew or were reckless in not knowing that they needed to verify the truth of their statements about complying with Chinese privacy data regulations.

## C.   Defendants' Statements Themselves Support a Strong Inference of Scienter

167.   As discussed above, during the Class Period, in addition to speaking at length about 360 DigiTech's process of collecting customers' data, Defendants also touted the Company's

ability to do so to "avoid unnecessary privacy invasion" and that the Company "will never collect data without users' consent."

168.    These statements, and others like them, provide a strong inference that Defendants knew they intentionally misled the market.  At all points during the Class Period, Defendants had an informational advantage over the market as they were the ones involved with 360 DigiTech's data collection process and were aware of the true nature of what data 360 DigiTech collected. Accordingly, Defendants knew that either their statements were false and/or misleading when made, or were reckless in not knowing, because unlike investors, they had access to internal information relating to 360 DigiTech's data collection process.

169.    Indeed, Defendants explained that the Company's "cyber security capabilities [] are part of its core DNA" and that "maintain[ing] the highest standard of compliance in line with the latest regulations" was "critical for healthy and sustainable development of our business"—further demonstrating that Defendants were well aware of the Company's non-compliant privacy data collection process or were reckless in not becoming aware of such process prior to speaking publicly about the topic.

170.    Therefore, these statements, and others like them, provide a strong inference that Defendants knew of, or at the very least, were reckless in not knowing that the Company was not in full compliance with applicable privacy data regulations.

## IX.    CONTROL PERSON ALLEGATIONS

171.    The Individual Defendants, by virtue of their high-level and controlling positions at 360 DigiTech, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition as alleged herein.  As set forth below, the materially

misstated information conveyed to the public was the result of the collective actions of these individuals.

172.   Defendants Haisheng Wu, Jiang Wu, and Xu, as senior executive officers of 360 DigiTech, Defendants Haisheng Wu, Jiang Wu, Xu, and Zhou as directors of 360 DigiTech, and Defendant Zhou as controlling shareholder of 360 DigiTech—a publicly-held company whose ADSs were, and are, traded on the NASDAQ, and governed by the federal securities law—each had a duty to disseminate prompt, accurate, and truthful information with respect to the Company's business, operations, internal controls, growth, financial statements, and financial condition, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of 360 DigiTech's publicly traded ADSs would be based on accurate information.  The Individual Defendants each violated these requirements and obligations during the Class Period.

173.   Defendants Haisheng Wu, Jiang Wu, and Xu, because of their positions of control and authority as senior executive officers of 360 DigiTech, Defendants Haisheng Wu, Jiang Wu, Xu, and Zhou as 360 DigiTech directors, and Defendant Zhou, as the controlling shareholder of 360 DigiTech, were able to and did control the content of 360 DigiTech's SEC filings, press releases, and other public statements issued by or on behalf of 360 DigiTech during the Class Period.  Each would have been provided with copies of the statements made in the SEC filings at issue in this action before they were issued to the public and would have had the ability to prevent their issuance or cause them to be corrected.   Accordingly, the Individual Defendants are responsible for the accuracy of the public statements alleged herein.

174.   The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of 360 DigiTech ADSs by

disseminating materially false and misleading information and concealing and omitting material adverse facts. The scheme deceived the investing public regarding 360 DigiTech's business, operations, and management, and the intrinsic value of 360 DigiTech's ADSs, and caused Lead Plaintiff and members of the Class to purchase 360 DigiTech ADSs at artificially inflated prices.

## X.    CLASS ACTION ALLEGATIONS

175.    Lead Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who or which purchased or otherwise acquired the publicly traded ADSs of 360 DigiTech during the Class Period and were damaged thereby. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of 360 DigiTech during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) 360 DigiTech's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

176.    The members of the Class are so numerous that joinder of all members is impracticable. According to public reports filed with the SEC, during the Class Period, 360 DigiTech had over 50 million ADSs outstanding and was actively traded on the NASDAQ under the ticker symbol "QFIN." While the exact number of Class members is unknown to Lead Plaintiff at this time, and such number can only be ascertained through appropriate discovery, Lead Plaintiff believes that the proposed Class has thousands of members and is widely dispersed geographically. Record owners and other members of the Class may be identified from records maintained by 360 DigiTech and/or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

177. Lead Plaintiff's claims are typical of the claims of the members of the Class. All members of the Class were similarly affected by Defendants' allegedly wrongful conduct in violation of the Exchange Act as complained of herein.

178. Lead Plaintiff will fairly and adequately protect the interests of the members of the Class. Lead Plaintiff has retained counsel competent and experienced in class and securities litigation.

179. Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. The questions of law and fact common to the Class include, but are not necessarily limited to, the following:

(a)    Whether Defendants violated the federal securities laws by their acts and omissions alleged herein;

(b)    Whether the statements Defendants made to the investing public during the Class Period contained material misrepresentations or omitted to state material information;

(c)    Whether, and to what extent, the market price of 360 DigiTech ADSs was artificially inflated during the Class Period because of the material misstatements alleged herein;

(d)    Whether Defendants acted with the requisite level of scienter;

(e)    Whether the Individual Defendants were controlling persons of 360 DigiTech; and

(f)    Whether the members of the Class have sustained damages as a result of the conduct complained of herein, and if so, the proper measure of such damages.

180. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by individual Class members may be

relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## XI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

181.    To the extent that Lead Plaintiff alleges that Defendants made affirmative misstatements, Lead Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities traded in an efficient market;

(d)    the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;

(e)    Lead Plaintiff and other members of the Class purchased 360 DigiTech's securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts;

(f)    360 DigiTech's ADSs met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(g)    as a regulated issuer, 360 DigiTech filed periodic public reports with the SEC and the NASDAQ;

(h)    360 DigiTech regularly communicated with public investors via established market communication mechanisms, including regular dissemination of press releases

on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(i)    360 DigiTech was followed by numerous securities analysts employed by major brokerage firms including, but not limited to, Morgan Stanley Research, Citi Research, Jefferies, UBS, CCBI, and CMB International, all of which wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace.

182.    As a result of the foregoing, the market for 360 DigiTech's securities promptly digested current information regarding 360 DigiTech from publicly available sources and reflected such information in 360 DigiTech's securities price(s).  Under these circumstances, all persons and entities who or which purchased or otherwise acquired 360 DigiTech's ADSs during the Class Period suffered similar injuries through their purchase of 360 DigiTech at artificially inflated prices and thus, the presumption of reliance applies.

183.    The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of 360 DigiTech ADSs.

184.    Without knowledge of the misrepresented or omitted material facts alleged herein, Lead Plaintiff and other members of the Class purchased shares of 360 DigiTech's ADSs between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed.

185.    To the extent that the Defendants concealed or improperly failed to disclose material facts with respect to 360 DigiTech's business, Lead Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

## XII.   NO SAFE HARBOR

186.   The statutory safe harbor provided by the PSLRA for forward-looking statements under certain circumstances does not apply to any of the materially false and misleading statements alleged in this pleading.  First, many of the statements alleged to be false and misleading relate to historical facts or existing conditions.  Second, to the extent any of the allegedly false and misleading statements may be characterized as forward-looking, they were not adequately identified as "forward-looking" statements when made.  Third, any purported forward-looking statements were not accompanied by meaningful cautionary language because the risks that Defendants warned of had already come to pass.

187.   To the extent any statements alleged to be false and misleading may be construed to discuss future intent, they are mixed statements of present or historical facts and future intent and are not entitled to PSLRA safe-harbor protection—at least with respect to the part of the statement that refers to the present.

188.   In addition, the PSLRA imposes an additional burden on oral forward-looking statements, requiring Defendants to include a cautionary statement that the particular oral statement is a forward-looking statement, and that "actual results might differ materially from those projected in the forward-looking statement."  15 U.S.C. § 78u-5(c)(2)(A)(i)-(ii).  Defendants failed to both identify certain oral statements as forward-looking and include the cautionary language required by the PSLRA.

189.   Furthermore, Defendants did not accompany their statements with meaningful cautionary language identifying important factors that could cause actual results to differ materially from any results projected.  To the extent Defendants included any cautionary language, that language was not meaningful because any potential risks identified by Defendants had already passed or manifested.  As detailed herein, Defendants failed to disclose to the market that,

throughout the Class Period, 360 DigiTech was over-collecting its customer's personal information without their consent, in violation of multiple Chinese regulations.

190.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, or the forward-looking statement was authorized or approved by an executive officer of 360 DigiTech who knew that the statement was false when made.

## XIII.   CAUSES OF ACTION

<u>COUNT I</u>

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5
Against 360 DigiTech and the Individual Defendants**

191.    Lead Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

192.    This Count is asserted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC against 360 DigiTech and the Individual Defendants.

193.    As alleged herein, throughout the Class Period, 360 DigiTech and the Individual Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails and/or the facilities of national securities exchanges, made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading and carried out a plan, scheme and course of conduct, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. 360 DigiTech and the Individual Defendants intended to and did, as alleged herein, (i) deceive the investing public, including Lead Plaintiff and members of the Class; (ii) artificially inflate and

maintain the price of 360 DigiTech ADSs; and (iii) cause Lead Plaintiff and members of the Class to purchase 360 DigiTech ADSs at artificially inflated prices.

194.    The Individual Defendants were individually and collectively responsible for making the false and misleading statements and omissions alleged herein and having engaged in a plan, scheme, and course of conduct designed to deceive Lead Plaintiff and members of the Class, by virtue of having made public statements and prepared, approved, signed, and/or disseminated documents that contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading.

195.    As set forth above, 360 DigiTech and the Individual Defendants made their false and misleading statements and omissions and engaged in the fraudulent activity described herein knowingly and intentionally, or in such a deliberately reckless manner as to constitute willful deceit and fraud upon Lead Plaintiff and the other members of the Class who purchased 360 DigiTech ADSs during the Class Period.

196.    In ignorance of the false and misleading nature of 360 DigiTech and the Individual Defendants' statements and omissions, and relying directly or indirectly on those statements or upon the integrity of the market price for 360 DigiTech ADSs, Lead Plaintiff and other members of the Class purchased 360 DigiTech ADSs at artificially inflated prices during the Class Period. But for the fraud, Lead Plaintiff and members of the Class would not have purchased 360 DigiTech ADSs at such artificially inflated prices. As set forth herein, when the true facts were subsequently disclosed, the price of 360 DigiTech ADSs declined precipitously, and Lead Plaintiff and members of the Class were damaged and harmed as a direct and proximate result of their purchases of 360 DigiTech ADSs at artificially inflated prices and the subsequent decline in the price of that security when the truth was disclosed.

197.    By virtue of the foregoing, 360 DigiTech and the Individual Defendants are liable to Lead Plaintiff and members of the Class for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against All Individual Defendants

198.    Lead Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

199.    This Count is asserted pursuant to Section 20(a) of the Exchange Act against the Individual Defendants.

200.    The Individual Defendants had control over 360 DigiTech and made the materially false and misleading statements and omissions on behalf of 360 DigiTech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their executive leadership positions and positions as directors of 360 DigiTech, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Lead Plaintiff contends were false and misleading.  The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by Lead Plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

201.    In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have

had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.

202.    By reason of such wrongful conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiff prays for relief and judgment as follows:

A.  Determining that this action is a proper class action, and certifying Lead Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's counsel as Lead Counsel for the Class;

B.  Awarding compensatory damages in favor of Lead Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and post-judgment interest, as allowed by law;

C.  Awarding Lead Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.  Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Lead Plaintiff demands a trial by jury.

Dated: January 14, 2022                         By: s/  *James W. Johnson*

**LABATON SUCHAROW LLP**
James W. Johnson
Michael H. Rogers

David J. Schwartz
James T. Christie
140 Broadway
New York, NY 10005
T: 212-907-0700
F: 212-818-0477
jjohnson@labaton.com
mrogers@labaton.com
dschwartz@labaton.com
jchristie@labaton.com

*Counsel for Lead Plaintiff Gad Sorek and the
Proposed Class*