UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re 360 DigiTech, Inc. Securities Litigation

:  No. 1:21-cv-06013-AKH
:
:  **ECF CASE**
:  **Electronically Filed**
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT 360 DIGITECH, INC'S MEMORANDUM OF LAW
IN OPPOSITION TO LEAD PLAINTIFF'S
<u>MOTION TO STRIKE CERTAIN EXHIBITS</u>**


SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Defendant 360 DigiTech, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT...................................................................................................................................2

I.      News Articles and Press Releases....................................................................................3

        A.      Exhibits E, J–L, and Q–U Are All Judicially Noticeable ......................................3

        B.      Exhibits Q–U Are Integral to the Complaint ..........................................................6

II.     The Court Should Take Notice of the Q2 2021 Earnings Call Transcript..........................7

III.    SEC Filings May Be Considered On A Motion To Dismiss ..............................................9

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................................2, 9

*In re Axis Capital Holdings Ltd. Securities Litigation*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)......................................................................1, 9

*Bettis v. Aixtron SE*,
    No. 16 CIV. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016)..........................6

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997).....................................................................................6

*Cortec Industries, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)..............................................................................3, 6, 7, 8

*Delfonce v. Eltman Law, P.C.*,
    No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249 (E.D.N.Y. Feb. 15, 2017), *aff'd*,
    712 F. App'x 17 (2d Cir. 2017) ................................................................................2

*I. Meyer Pincus & Associates v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)..................................................................................1, 7, 8, 9

*In re Initial Public Offering Securities Litigation*,
    383 F. Supp. 2d 566 (S.D.N.Y. 2005).........................................................................6

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
    289 F. Supp. 2d 416 (S.D.N.Y. 2003)...................................................................3, 4, 6

*Plymouth County Retirement System v. Evolent Health, Inc.*,
    No. 1:19-CV-1031 (RDA/TCB), 2021 WL 1439680 (E.D. Va. Mar. 24, 2021)................9

*In re Take-Two Interactive Securities Litigation*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)..........................................................................4

*In re UBS AG Securities Litigation*,
    No. 07 CIV. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub
    nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173
    (2d Cir. 2014).......................................................................................................4

### STATUTES

15 U.S.C.A. § 78u-4............................................................................................................10

**RULES**

Fed. R. Evid. 201(b)......................................................................................................3, 4, 6, 8

Defendant[1] 360 DigiTech, Inc. respectfully submits this memorandum of law in opposition to Lead Plaintiff's Motion to Strike Certain Exhibits From Defendant's Motion to Dismiss (ECF No. 50) ("Motion to Strike" or "MTS")).

## PRELIMINARY STATEMENT

Plaintiff brings this motion to strike in a transparent attempt to side-step obvious pleading failures in his Complaint.  Confronted with these fatal deficiencies, which Defendant's Motion to Dismiss set forth in detail, Plaintiff attempts to avoid dismissal not only by cherry-picking facts to manufacture "support" for his conclusory claims, but by requesting this Court to strike various documents that contradict his fabricated narrative.  Unfortunately for Plaintiff, it is well-established that courts should not "close [their] eyes to the contents of [documents] and . . . permit[] a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [documents] to the complaint or to incorporate [them] by reference."  *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  Plaintiff's approach would "impos[e] upon the court, the parties and society enormous social and economic costs absent some factual basis."  *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 584 (S.D.N.Y. 2006).  His Motion to Strike should be denied.

First, Plaintiff challenges a series of widely circulated newspaper articles and official Chinese government press releases, all of which are judicially noticeable under applicable law. Not only are such documents public and widely known within this District, but they relate directly to claims at the heart of Plaintiff's Complaint, and thus are integral to it.

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 46 ("Opening Brief" or "Br.")). "Opposition" or "Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss.  (ECF No. 49.)  All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

Second, Plaintiff claims that the Court should ignore the Company's Q2 2021 public earnings call transcript, despite relying *repeatedly* on similar transcripts throughout the Complaint. Plaintiff does not (and cannot) explain why this publicly available document, of which he clearly had notice, should be stricken from the record.

Third, Plaintiff asks the Court to strike three of the Company's legally required SEC filings, ignoring clear black-letter law holding that such documents can be considered on a motion to dismiss.

In apparent recognition of the fact that these arguments lack any basis in law, Plaintiff argues that, at the very least, the Court should not accept the Exhibits for the truth of the matters asserted therein. As explained below, the Exhibits were not offered for the truth of their contents, but only for what the Company *said* or what the investing public *understood*. In any event, this argument is a red herring to distract attention from Plaintiff's failure to plead particularized facts sufficient to support his Exchange Act claims.

For these reasons, as explained in further detail below, his Motion to Strike should be denied.

**ARGUMENT**

On a motion to dismiss, it is black-letter law that courts may consider "legally required public disclosure documents filed with the SEC," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), "documents attached as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, [and] documents integral to the complaint." *Delfonce v. Eltman Law, P.C.*, No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249, at *2 (E.D.N.Y. Feb. 15, 2017), *aff'd*, 712 F. App'x 17 (2d Cir. 2017). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the

trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Even if a document is not incorporated by reference or filed with the SEC, the Second Circuit has made clear that courts are "entitled to consider [on a motion to dismiss] . . . documents [that] plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit . . . because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

**I.    News Articles and Press Releases**

**A.    Exhibits E, J–L, and Q–U Are All Judicially Noticeable**

Despite extensively referencing newspaper articles in his own Complaint and explaining why it was proper for him to have done so, (Opp. at 13 n.6), Plaintiff moves to strike five newspaper articles submitted by Defendant that were published by *The New York Times*, *Financial Times*, *ABC News*, *Bloomberg*, and *Reuters*.  (Exs. E, J–L, R.)  It is well-established, however, that "[t]he Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment."  *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 289 F. Supp. 2d 416, 425 n.15 (S.D.N.Y. 2003).[2]  All of these articles are judicially noticeable, as Plaintiff does not (and cannot) dispute that they are "generally known within" this District, and originate from "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The four official press releases issued by Chinese government authorities are also judicially

---

[2]    As shown above, Plaintiff's assertion that *Merrill Lynch* did not hold that newspaper articles are judicially noticeable is plainly incorrect. (MTS at 5 n.2.)  And contrary to Plaintiff's claim, Defendant did not assert that the crackdown was the cause of his loss—it only argued that Plaintiff *fails to allege particularized facts* to show that his loss "was caused by the alleged misstatements as opposed to intervening events."  (Br. at 25.)

noticeable. (Exs. Q, S–U.) These documents, which were published on a Chinese regulator's website and widely covered by Western media, including in the *Reuters* article discussed above, (Ex. R), all concerned the well-known, market-wide Chinese regulatory crackdown on several Chinese internet companies in July 2021. Courts routinely take judicial notice of widely known market-wide events. *See Merrill Lynch*, 289 F. Supp. 2d at 419 ("[T]he Court may take judicial notice of the burst of the notorious *internet bubble* which directly intervened during plaintiffs' ownership of the securities and caused the virtual destruction of their stock holdings."); *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 (RJS), 2012 WL 4471265, at *21 (S.D.N.Y. Sept. 28, 2012) (relying on "a *market-wide downturn* impacting [defendants'] various businesses"), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). Tellingly, the Motion to Strike does not even attempt to deny that these market-wide events were widely known, not only within this District—*i.e.*, the same District in which the affected companies conducted their IPOs—but also internationally. *See* Fed. R. Evid. 201(b). Nor does Plaintiff dispute that these events were reported by sources "whose accuracy cannot reasonably be questioned," *id.*, including *Reuters* (Ex. R) and the Chinese government itself (Exs. Q, S–U). Hence, these Exhibits, too, are judicially noticeable.

Contrary to Plaintiff's claim, Defendant does not rely on any of these sources "for the truth of the matter asserted therein," (MTS at 4), but only to demonstrate "*how the investing public understood*" the regulatory implications and risks affecting the Company's business. *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 284 n.23 (S.D.N.Y. 2008). For example, Defendant cited Exhibit E (the *New York Times* article that discussed China's Cybersecurity Law), and Exhibits J–L (the news articles that discussed the April 29 Meeting), not for the truth of their contents, but only to show how "Western commentators" viewed these regulatory developments

4

and, in turn, how shareholders might view the relevant risks and ambiguities. (Br. at 5, 9.) Indeed, the Opening Brief does not even cite these Exhibits relating to either the Cybersecurity Law or the April 29 Meeting in the argument section, let alone "ask the Court to consider them" or their contents as a basis for dismissal.[3] (MTS at 5.)

Similarly, Defendant does not rely on Exhibit R (the *Reuters* article that discussed the market-wide July 2021 crackdowns on Chinese companies), or Exhibits Q and S–U (the Chinese regulatory press releases publicly announcing such crackdowns) for the truth of their contents, but only to show the undisputed fact that intervening events were announced at the same time that Chinese regulators temporarily removed 360 Jietiao from app stores on July 8, 2021. (Br. at 11–12.) The existence of these intervening events and their adverse impact on the stock prices of U.S.-listed Chinese companies are judicially noticeable, (Br. at 12, 25; MTS at 5), as both facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

[3]  Although the Motion to Dismiss argues that the ambiguity of the Cybersecurity Law renders implausible Plaintiff's assertion that the May 10 Bulletin establishes that the Company violated data privacy laws throughout the Class Period, (Br. at 4–7, 18–19), Defendant never relied on Exhibit E for the truth of its statements regarding such ambiguity. Rather, Defendant argues that such ambiguity is apparent based on allegations and facts not challenged in the Motion to Strike, including (i) the Complaint itself (*see, e.g.*, AC ¶ 63 (alleging the November 2019 Definitions were "***increased regulation[s]***" "implemented . . . to **reinforce the Chinese Cybersecurity Law**")); (ii) documents referenced therein (Ex. D (failing to define the principles of necessity or user consent); Ex. G at 1, 3–4 (clarifying, for the first time, "practices [that] may be identified" as violating the principles of necessity or user consent, in order "to provide reference for the identification of illegal collection and use of personal information by Apps and ***implementing the Cybersecurity Law***")); and (iii) the Opposition (Opp. at 12 n.5 (***admitting*** the May 1 Provisions "provided . . . additional guidance for preexisting regulations governing data collection")). Similarly, the Motion to Dismiss did not rely on any Exhibits referenced in the Motion to Strike to establish that Plaintiff fails to plead the April 29 Meeting did not constitute a "warning" about compliance violations. Rather, Defendant argued that Plaintiff's claim is unsupported by documents referenced in the Complaint, and that his other conclusory and speculative assertions fail to state a claim as a matter of law. (Br. at 17–18.)

questioned," Fed. R. Evid. 201(b), including "well-publicized stock prices."[4] *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005).

## B. Exhibits Q–U Are Integral to the Complaint

Plaintiff's attempt to strike Exhibit R (the *Reuters* article discussing the July 2021 Chinese regulatory crackdown) and Exhibits Q and S–U (the Chinese regulatory press releases) fails for the separate and independent reason that they are integral to the Complaint. "[D]ocuments plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit . . . [are] integral to its complaint." *Cortec*, 949 F.2d at 48. As noted above, Plaintiff does not even ***attempt*** to deny that he had "undisputed notice" of these well-publicized, market-wide events. *Id.* Nor is such an argument plausible, because, as courts have recognized, "information . . . reported nationally and internationally in publications such as *The New York Times, Houston Chronicle, Wall Street Journal*, and *Dow Jones Business News*" are plainly "in the public domain" and thus available to shareholders. *Bettis v. Aixtron SE*, No. 16 CIV. 00025 (CM), 2016 WL 7468194, at *12 (S.D.N.Y. Dec. 20, 2016). Where, as here, such events were reported by *Reuters* and numerous other prominent publications, including those listed above, Plaintiff cannot now claim he lacked notice of these events. *See Cortec*, 949 F.2d at 48; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("the primary problem raised by looking to

---

[4] The fact that the temporary removal of the 360 Jietiao app on July 8 coincided with a market-wide Chinese regulatory crackdown that negatively impacted the stock prices of the majority of U.S.-listed Chinese companies evidences a ***pleading*** deficiency in the Complaint, and not, as Plaintiff claims, a counterfactual argument. (MTS at 5 n.2.) As shown in the Opening Brief, Plaintiff's "failure to plead" that the alleged misrepresentations and omissions were the proximate cause of the losses is yet another basis for dismissal. (Br. at 2, 25.) *See Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 289 F. Supp. 2d 416, 419 (S.D.N.Y. 2003) (taking judicial notice of "[t]he burst of the bubble" and holding "the attendant market chaos are not chargeable to the defendants and represent intervening causes for which defendants are not responsible in the sequence of responsible causation").

documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff **has actual notice** . . . and has relied upon these documents in framing the complaint'" (alteration in original)).

Hence, the fact that the temporary removal of 360 Jietiao on July 8, 2021 coincided with this widely reported regulatory crackdown and the corresponding stock drops affecting most U.S.-listed Chinese companies, is plainly a fact integral to his claim of causation. (*See* AC ¶¶ 144–52.) As the Second Circuit has made clear, "when 'plaintiff fails to introduce a pertinent document [or fact] as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading,'" *I. Meyer Pincus*, 936 F.2d at 762, because "plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec*, 949 F.2d at 47; *see also I. Meyer Pincus*, 936 F.2d at 762 (declining to "create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach [documents] to the complaint or to incorporate [them] by reference").[5]

## II.     The Court Should Take Notice of the Q2 2021 Earnings Call Transcript

Plaintiff's request to strike Exhibit I (the Company's Q2 2021 Earnings Call Transcript) should be denied, as it is a textbook example of the type of gamesmanship rejected by the Second Circuit in *Cortec* and *I. Meyer Pincus*.  Plaintiff cites **three** of the Company's Earnings Call Transcripts throughout the Complaint, including transcripts from Q1 2020, (AC ¶¶ 22, 26, 49, 55, 77, 108, 149, 154), Q3 2020 (*id.* ¶¶ 23, 70, 82, 115, 155, 169), and **Q1 2021** (*id.* ¶¶ 7, 32, 33, 95, 124, 126, 143)—the quarter **immediately before** the Q2 2021 transcript he now seeks to strike from

---

[5]    Plaintiff's cases are inapposite, either because they involved exhibits that were not judicially noticeable or integral to the complaint, or because they declined to consider exhibits for the truth of their contents. (*See* MTS at 5–6.)  As explained above, Defendant does not offer these Exhibits for the truth of their contents.

the record (MTS at 7).  Given his heavy reliance on the Company's Earnings Call Transcripts in drafting his Complaint—all of which are publicly available—Plaintiff cannot now cherry-pick language favorable to his claim and assert that he lacked notice of the Q2 2021 Earnings Call Transcript, which took place on August 20, 2021, five months before the Complaint was filed.  *See Cortec*, 949 F.2d at 48  ("Where plaintiff has ***actual notice*** of all the information in the movant's papers and has ***relied upon these documents in framing the complaint***, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

Moreover, the Complaint repeatedly asserts, in conclusory fashion, that an unidentified Company employee "admitted" that the July 8 removal of 360 Jietiao was caused by Defendants' "illegal use of personal information" (AC ¶¶ 4, 8, 20, 35, 74, 78, 100, 107, 126, 130, 146)—a fact which is completely unsupported by the document Plaintiff cites.  (Br. at 19.)  As noted above, (*supra* § I.B), "when 'plaintiff fails to introduce a pertinent document [or fact] as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'"  *I. Meyer Pincus*, 936 F.2d at 762.  Given Plaintiff's "undisputed notice" of this Earnings Call Transcript, in which the Company explained that the July 8 removal was due to a functional update, this Exhibit is integral to Plaintiff's central claim that, despite what the Company had said, the removal was "actually" due to "illegal" data privacy violations.  *See Cortec*, 949 F.2d at 48.

Nor does Defendant contend that Exhibit I should be considered for the truth of the matter asserted therein.  Instead, it was offered only for the purpose of showing what the Company ***said*** and thus to highlight Plaintiff's failure to plead particularized facts showing the statements' falsity. Just as Plaintiff failed to engage with the well-known, market-wide regulatory events that occurred on or around July 8, 2021, Plaintiff failed to show why the Company's official public statements contained in Exhibit I were wrong by pleading particularized allegations to support his conclusory

allegation that the Company "admitted" to "illegal" conduct.  Once again, Plaintiff should not be permitted "to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach [documents] to the complaint or to incorporate [them] by reference," *I. Meyer Pincus*, 936 F.2d at 762, and his failure to ***plead*** sufficient particularized facts contradicting the Company's public statements warrants dismissal.[6]

### III.   SEC Filings May Be Considered On A Motion To Dismiss

Like his challenge to Exhibit I, (*supra* § II), Plaintiff's attempt to strike Exhibits P, V, and W—three SEC filings filed on Form 6-K—is in direct contravention of well-established Second Circuit law holding that courts "may consider . . . legally required public disclosure documents filed with the SEC" in reviewing a motion to dismiss, *ATSI*, 493 F.3d at 98, and confirms that his Motion to Strike is nothing more than a manipulative attempt to cherry-pick facts that suit his own narrative in a blatant attempt to survive dismissal "as a pretext for the discovery of unknown wrongs" and to "impos[e] upon the court, the parties and society enormous social and economic costs absent some factual basis." *Axis*, 456 F. Supp. 2d at 584.  Because Plaintiff's Motion to Strike failed to allege how these exhibits are contrary to well-established law, it should be denied.

Plaintiff's separate claim that these Exhibits cannot be considered for the truth of the matter, once again, misses the point.  The Exhibits were not offered for the truth of their contents.

---

[6]   Plaintiff's cited cases are inapposite because, unlike here, the transcripts in those cases were not "integral" to the complaint.  (MTS at 7.)  Moreover, the out-of-circuit holding in *Plymouth County Retirement System v. Evolent Health, Inc.*, No. 1:19-CV-1031 (RDA/TCB), 2021 WL 1439680, at *18 (E.D. Va. Mar. 24, 2021) that a plaintiff's reference to select statements of one transcript "does not open the door for the Court to consider all the statements provided in" that transcript is contrary to the law of this Circuit. The Second Circuit specifically "decline[d] to close [its] eyes to the contents of [documents referenced in the complaint] and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  Finally, because Defendant does not assert that Exhibit I should be considered for the truth of its contents, Plaintiff's other cases are inapplicable.  (MTS at 8.)

Instead, they were offered to show only what the Company *said*.  For the Exhibits to be relevant to the Motion to Dismiss, this Court need not accept "that the 360 Jietiao app's temporary suspension did not have a material adverse impact on the Company's operations."  (MTS at 8.) Rather, the Exhibits are relevant to the Motion to Dismiss and are proper subjects for the Court's consideration because they make plain Plaintiff's failure to plead particularized facts to show the falsity of the Company's disclosures, (Br. at 21), and "the reason or reasons why the statement[s] [are] misleading," as is necessary to state a Section 10(b) claim under the PSLRA.  15 U.S.C.A. § 78u-4.  Indeed, the Complaint does not even challenge any of the statements contained in these Exhibits as misleading.  (*See* AC ¶¶ 106–119.)

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike should be denied.

Dated: New York, New York
     May 13, 2022

                              Respectfully submitted,


                              /s/ Robert A. Fumerton
                              Scott D. Musoff
                              Robert A. Fumerton
                              Michael C. Griffin
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              One Manhattan West
                              New York, New York 10001
                              Telephone: (212) 735-3000

                              *Attorneys for Defendant 360 DigiTech,
                              Inc.*