**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| In re 360 DigiTech, Inc. Securities Litigation | No. 1:21-cv-06013-AKH<br><br>Judge Alvin K. Hellerstein<br><br><u>CLASS ACTION</u><br><br>ORAL ARGUMENT REQUESTED |

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF LEAD PLAINTIFF'S MOTION TO STRIKE CERTAIN EXHIBITS
FROM DEFENDANT 360 DIGITECH, INC.'S MOTION TO DISMISS THE
<u>AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Lead Plaintiff Gad Sorek ("Plaintiff") respectfully submits this reply memorandum of law in further support of Plaintiff's Motion to Strike Certain Exhibits (the "Motion to Strike" or "MTS") (ECF No. 50) from Defendant 360 Digitech, Inc.'s ("360 DigiTech" or the "Company," and together with Defendants Haisheng Wu, Jiang Wu, Zuoli "Alex" Xu, and Hongyi Zhou, "Defendants") Motion to Dismiss the Amended Consolidated Class Action Complaint (the "Complaint") (ECF No. 41) pursuant to Rule 12(b)(6) (the "Motion" or "MTD") (ECF No. 45).

## I.    INTRODUCTION

Defendants' Opposition to Plaintiff's Motion to Strike (the "Motion to Strike Opposition" or "MTS Opp.") (ECF No. 64)[1] is a failed attempt to argue that selected documents—none of which the Complaint cited, quoted, referenced, or otherwise relied upon—should be considered in conjunction with their Motion to Dismiss.  In so doing, Defendants effectively ask the Court to consider an alternate narrative, complete with facts and inferences not set forth in the Complaint, nor found in any documents properly before the Court.  For each category of documents, Defendants argue that (i) the Court should not strike them,[2] in large part (ii) because they did not offer them for the truth of the matter asserted.  Both arguments fail.

First, the newspaper articles, Chinese press releases, and earnings call transcript should be stricken from the record because they are neither integral to the Complaint nor properly the subject of judicial notice.  Tellingly, not only do Defendants fail to distinguish, let alone meaningfully address, any of Plaintiff's authority that supports the Court's striking these documents, but Defendants' cited authority does not compel a contrary conclusion.

---

[1] Capitalized terms herein have the same meaning as set forth in the Complaint and Plaintiff's memorandum of law in opposition to Defendants' Motion (ECF No. 49).  Citations to "¶ __" refer to Complaint paragraphs. "MTD at __" refers to the memorandum of law in support of Defendants' Motion (ECF No. 46).  "MTS at __" refers to the memorandum of law in support of Plaintiff's Motion to Strike (ECF No. 51).

[2] To clarify, despite Defendants' insistence that Plaintiff is asking the Court to strike the SEC filings, Plaintiff asks no such thing.  Plaintiff asks only that the Court not consider the SEC filings for the truth of their contents.

Second, despite Defendants' repeated protestations that they do not seek to direct the Court's attention to these Exhibits for the truth of their contents, such an explanation is belied by Defendants' own arguments as well as common sense.  Indeed, regardless of whether Defendants ask the Court to take notice of: (i) commentators' and investors' views on Chinese regulatory developments (MTS Opp. at 4–5); (ii) the supposed effects of Chinese regulatory crackdowns on stock prices (*id.* at 5–7); (iii) theoretical alternative explanations for the app's removal (*id.* at 8); or (iv) a counterfactual narrative in which the app's removal had no material adverse effect on the Company (*id.* at 9–10), **none** are appropriate facts or inferences for consideration because **all** require the Court to accept the facts expressed or referenced in the Exhibits as true.  *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 28–29, 35 (S.D.N.Y. 2019) (declining to consider or take judicial notice of extraneous exhibits where parties sought to use them for the truth of their contents—and thus also not considering arguments that hinged on those exhibits).

It is a pillar of federal procedure that "the only facts to be considered are those alleged in the complaint," even if "the complaint may turn out to be self-serving and untrue."  *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).  Defendants may not, at the motion to dismiss stage, submit extraneous documents introducing new facts and then ask the Court to consider them along with the Complaint's allegations.  As the Second Circuit explained, "[i]f the complaint is found to be sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the truth of the plaintiff's allegations and to offer its own version."  *Id.*; *see also Arnold v. Toyota Material Handling, Inc.*, 2022 WL 405593, at *3 (N.D.N.Y. Feb. 10, 2022) (declining to consider documents not integral to complaint because plaintiff allowed to develop its own record, though it may differ from the documents).  Indeed, "a court at this stage of our proceeding

is not engaged in an effort to determine the true facts." *Doe*, 831 F.3d at 48. Thus, any effort by Defendants to offer their own version of events by relying on such documents should be rejected.

## II.      ARGUMENT

### A.      The Court Should Strike Certain Newspaper Articles and Press Releases

Defendants argue that the Court should not strike certain newspaper articles and Chinese press releases to which they cite to (i) assert that the Chinese data privacy laws were ambiguous (Exhibit E); (ii) describe the supposed purpose of and the discussions that took place at the April 29 Meeting (Exhibits J–L); and (iii) argue that the Chinese crackdown on U.S.-listed Chinese companies caused share prices to fall (Exhibits Q–U). MTS Opp. at 3–7.

As explained in Plaintiff's Motion to Strike, because the Complaint neither referenced nor relied on these newspaper articles or press releases, it is improper for Defendants to ask the Court to consider them at the motion to dismiss stage. MTS at 4–6. Tellingly, Defendants do not even attempt to distinguish, let alone address, any of Plaintiff's authority that instructs courts to strike such exhibits. *See* MTS at 5–6. Defendants instead ask the Court to summarily reject all of Plaintiff's cases because Defendants do not offer the exhibits for the truth of their contents.[3]

Defendants spill much ink trying to convince the Court that they are not offering these materials for the truth of the matter asserted. MTS Opp. at 4–6. This could not be further from the truth. In their Motion to Dismiss, Defendants argue that the ambiguity of the Cybersecurity Law renders certain of the Complaint's allegations implausible. MTS Opp. at 5 n.3; MTD at 5, 14–15. Yet, at the same time, Defendants claim they are not using Exhibit E—which they cite to

---

[3] Additionally, Defendants argue that Plaintiff does not dispute the accuracy of any of the exhibits, but Defendants entirely ignore Plaintiff's concerns over the statements contained in Exhibit E (the *New York Times* article), which were unsubstantiated and came from a person at a law firm in Beijing. MTS at 4 n.1.

show that the Chinese data privacy laws were ambiguous—to support that argument. This defies logic.[4]

Additionally, even Defendants' official, stated reason for offering Exhibits E and J–L (*i.e.*, to show how commentators and shareholders viewed regulatory developments and the April 29 Meeting) still falls well short of the applicable standard. Indeed, to ask the Court to consider how commentators or investors viewed the Cybersecurity Law or the April 29 Meeting at this stage without giving Plaintiff an opportunity to develop the record through discovery is inappropriate. *Arnold*, 2022 WL 405593, at *3 (declining to consider extraneous documents as not integral to complaint, and noting that plaintiff should be able to develop its own record at pleading stage). Instead, the Court must accept Plaintiff's allegations concerning the Cybersecurity Law and April 29 Meeting as true. *See*, *e.g.*, *Doe*, 831 F.3d at 48.[5]

Similarly, with respect to Exhibits Q–U, Defendants claim they do not rely on them for the truth of their contents, yet they assert that the facts reflected in those materials caused an "adverse impact on the stock prices of U.S.-listed Chinese companies." MTS Opp. at 5–6. In other words, Defendants ask the Court to accept as true—in the absence of *any* discovery, whether fact or expert—to support their arguments against loss causation. MTD at 12, 25; MTS at 4–5. This simply cannot be. Defendants' assertion that these events caused the stock prices to fall largely depend on Exhibits Q–U, which the Court should therefore decline to consider. *See In re Initial*

---

[4] To be sure, in admitting that the "Motion to Dismiss *argues* that the ambiguity of the Cybersecurity Law renders implausible Plaintiff's" claims, Defendants cite to pages 4–7 of their Motion to Dismiss (MTS Opp. at 5 n.3)—*which relies on Exhibit E* (MTD at 5)—thereby conceding that Exhibit E is used to support the "ambiguity" argument. Further, attempting to persuade the Court that Defendants' Motion to Dismiss did not rely on Exhibit E for the truth of its statements about the Cybersecurity Law being ambiguous, Defendants assert that the ambiguity of the Cybersecurity Law was apparent based on, *inter alia*, statements made in Plaintiff's Opposition. MTS Opp. at 5 n.3. But this argument makes no sense and should be rejected because Defendants' Motion to Dismiss could not have relied on statements made over a month later in Plaintiff's Opposition.
[5] With respect to Exhibits J–L, Defendants argue in conclusory fashion that they were not cited for the truth of their contents. MTS Opp. at 4–5. But Defendants offer no other arguments as support, so this, too, should be rejected.

*Pub. Offering Sec. Litig.* ("*IPO*"), 241 F. Supp. 2d 281, 374 n.136 (S.D.N.Y. 2003) (citation omitted) (inappropriate to look to supervening causes for loss causation where defendants "urge[d] that the [c]ourt take judicial notice of 'the significant market-wide and industry-wide downturn in early 2000,' which they suggest may account for [p]laintiffs' losses").

Defendants' argument that the Court should consider Exhibits Q–U because Plaintiff supposedly possessed or had knowledge of them fare no better. MTS Opp. at 6–7. Just because the contents of an exhibit may relate to allegations in the Complaint, and even if Plaintiff knew of or possessed this information, does not mean the Court should consider these exhibits. Defendants "misapprehend[] the relevant standard." *Lexmark*, 367 F. Supp. 3d at 28. "[I]t is not sufficient that [Plaintiff] knew of or possessed the [Exhibits]—rather, [Plaintiff] must have 'relied heavily upon [their] terms and effect' in drafting the Complaint such that the document is integral." *Id.* at 28–29.[6]

Defendants rely extensively on *I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.*, 936 F.2d 759 (2d Cir. 1991) and *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) in support of their proposition that defendants can introduce an exhibit if a "plaintiff fails to introduce a pertinent document [or fact] as part of his pleading" (MTS Opp. at 1, 3, 6–8) (brackets added by Defendants),[7] but this reliance is misplaced. In *I. Meyer*, for instance, the court took

---

[6] Because mere knowledge that a document exists is not enough to render that document integral to the Complaint, Defendants' reliance on *Bettis v. Aixtron SE*, 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) and *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997) (MTS Opp. at 6–7) is misplaced. Regardless, *Bettis* is off point because, unlike the issue at bar, the issue there was whether investors were aware of certain information alleged to have been concealed by defendants, to which the court held that the information was already publicly disclosed. 2016 WL 7468194, at *12. Similarly, *Burlington* does not further Defendants' point since the court there required that exhibits must have been "relied upon . . . in framing the complaint"—not that they were just known to plaintiff. 114 F.3d at 1426. Indeed, the court explained that the rule seeks to prevent a plaintiff from "extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Id.* That situation is inapplicable here.

[7] Notably, Defendants disingenuously alter the Second Circuit's language by adding in brackets the phrase "or fact," to make it appear as if Defendants are allowed to introduce exhibits if Plaintiff fails to introduce a pertinent ***fact*** as part of the pleading. MTS Opp. at 7–8. *I. Meyers* does not stand for this proposition. 936 F.2d at 762.

notice of a prospectus plaintiff failed to submit as an exhibit to a complaint "based *only* on an alleged written misrepresentation appearing within th[at specific] prospectus [and] no misrepresentations stemming from any other source."  936 F.2d at 762 (emphasis in original). Similarly, the court in *Cortec* took notice of several documents as integral to the complaint where, unlike here, each was explicitly referenced therein.  949 F.2d at 46–48.

Further, Defendants again cite *In re Merrill Lynch & Co. Research Reports Securities Litigation*, 289 F. Supp. 2d 416 (S.D.N.Y. 2003), but this time for the proposition that courts may judicially notice news articles (MTS Opp. at 3), unlike in their Motion to Dismiss where they cited it to contend that courts could judicially notice *market events as reported in news articles* (MTD at 25 n.11).  As to the latter, and contrary to Defendants' accusation otherwise (MTS Opp. at 3 n.2), Plaintiff *correctly* explained the court did not do so.  MTS at 5 n.2.  Notwithstanding Defendants' pivot to the former, the court there stated that a court may judicially notice a newspaper article only "for the fact of [the newspapers'] publication," *Merrill Lynch*, 289 F. Supp. 2d at 425 n.15; MTS Opp. at 3—not for the more substantive reasons Defendants here seek, such as the truth of their contents.

Therefore, the Court should strike Exhibits E, J–L, and Q–U, or at the very least not consider such documents for the truth of the matter asserted therein.  MTS at 4–6.

**B.      The Court Should Strike a Certain Earnings Call Transcript**

Defendants further argue that the Court should not strike Exhibit I, an earnings call transcript Defendants use to suggest an alternative reason for removal of the Company's app.  MTS Opp. at 7–8.  In support, Defendants note that Plaintiff cites to other earnings call transcripts, thereby suggesting that Plaintiff has improperly cherry-picked language favorable to his claim. MTS Opp. at 8.  Not so.  Taking Defendants' argument to its logical extreme, if a complaint cites to anything short of a complete record of all earnings call transcripts, news articles, and press

releases, courts can judicially notice every single earnings call transcript, public filing, and press release throughout the entire class period, regardless of their relevance. This cannot be the case. Indeed, the holding in *Cortec* belies this argument; it says only that a plaintiff cannot prevent the court from considering documents when the plaintiff "***relied upon these documents in framing the complaint***." 949 F.2d at 48 (emphasis added); MTS Opp. at 8. Plaintiff here did no such thing.[8]

Notably, Defendants do not dispute that a court may strike an earnings call transcript if it is not integral to the complaint. MTS Opp. at 9 n.6. Nor do they distinguish, let alone meaningfully address, Plaintiff's cases, such as *In re Bausch & Lomb, Inc. Securities Litigation*, which struck an earnings call transcript where the complaint neither referred to it, nor alleged that it contained any misrepresentations. 2003 WL 23101782, at *17 (W.D.N.Y. Mar. 28, 2003); MTS at 7–8.[9]

Defendants also argue that they did not introduce Exhibit I for the truth of the matter asserted. MTS Opp. at 8–9. However, Defendants' attempt to justify a legitimate purpose to introduce Exhibit I only highlights that they want the Court to accept as true the facts contained therein. For example, Defendants use Exhibit I to propose an alternative narrative explaining the Company's app's removal by the Chinese government. MTS at 7. As explained above, "on a motion to dismiss, alternative theories offered by Defendants cannot defeat the pleading." *IPO*,

---

[8] Defendants' additional argument that they are allowed to introduce a document when it pertains to a certain "fact" that is integral to the complaint—relying on their misleading quote from *I. Meyer* (MTS Opp. at 8)—should be rejected for the same reasons mentioned above. Indeed, as already explained, the relevant standard is not whether the contents of an exhibit relate to a complaint or whether plaintiff knew of or possessed the document; what matters is if plaintiff "relied heavily upon [their] terms and effect" in drafting the "[c]omplaint such that the document is integral." *Lexmark*, 367 F. Supp. 3d at 28–29.

[9] Defendants focus on only one case, *Plymouth County Retirement System v. Evolent Health, Inc.*, arguing that the holding there—where the court struck earnings call transcripts even when the complaint cited to them—is contrary to Second Circuit law. 2021 WL 1439680, at *18–19 (E.D. Va. Mar. 24, 2021); MTS Opp. at 9 n.6. However, this point neither weakens Plaintiff's position nor strengthens Defendants'. The Complaint here does not rely on or cite to Exhibit I; *Plymouth* was thus cited to show that courts have stricken earnings call transcripts even under worse facts. Defendants' choice to attack *Plymouth* instead of an in-circuit decision, such as *Bausch*, is telling.

241 F. Supp. 2d at 369 n.124; *Arnold*, 2022 WL 405593, at \*3.  Defendants "will . . . have ample opportunity to contest the truth of the [P]laintiff's allegations and to offer [their] own version" in discovery.  *Doe*, 831 F.3d at 48.

Therefore, the Court should strike Exhibit I, or alternatively, not consider Exhibit I for the truth of the matter asserted therein.  MTS at 7–8.

### C.    The Court Should Not Consider Certain SEC Filings for Their Truth

Defendants also argue that the Court should not strike Exhibits P, V, and W—which are certain SEC filings that Defendants cite to show that the app's suspension did not have a material adverse impact on the Company's operations.  MTS Opp. at 9.  But Defendants' strawman argument should be disregarded; Plaintiff's Motion to Strike never asks the Court to strike the SEC filings; instead, Plaintiff requests only that the Court decline to consider them for the truth of the matter asserted.  MTS at 8–9.

Defendants argue that they do not seek judicial notice of these SEC filings for the truth of their contents.  MTS Opp. at 9–10.  Such an explanation, however, leads inevitably to the follow up question: if not in service of the Court accepting as true that the app's suspension was not material to investors, or that the Company's net revenues supposedly increased between quarters, for what other purpose could Defendants conceivably want the Court to know what the Company "said"?  To be sure, when read in connection with their Motion to Dismiss, Defendants' Motion to Strike Opposition offers no other reasons.  MTS Opp. at 9–10.

Therefore, the Court should not consider Exhibits P, V, and W for the truth of the matter asserted therein.  MTS at 8–9.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike should be granted.

DATED:  Friday, May 20, 2022                    Respectfully submitted,

                                                */s/ James W. Johnson*
                                                **LABATON SUCHAROW LLP**
                                                James W. Johnson
                                                Michael H. Rogers
                                                David J. Schwartz
                                                James T. Christie
                                                Robert S. Rowley
                                                140 Broadway
                                                New York, NY 10005
                                                T: 212-907-0700
                                                F: 212-818-0477
                                                jjohnson@labaton.com
                                                mrogers@labaton.com
                                                dschwartz@labaton.com
                                                jchristie@labaton.com
                                                rrowley@labaton.com

                                                *Counsel for Lead Plaintiff Gad Sorek*
                                                *and the Proposed Class*

9