UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re 360 DigiTech, Inc. Securities Litigation

:   No. 1:21-cv-06013-AKH
:
:   **ECF CASE**
:   **Electronically Filed**
:
:   **Oral Argument Requested**
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT 360 DIGITECH, INC.'S MOTION TO <u>DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Defendant 360 DigiTech, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................2

I.      PLAINTIFF FAILS TO ALLEGE ANY MATERIAL MISREPRESENTATION ............2

        A.     Plaintiff Fails to Plead the Company Violated Any Preexisting Chinese Law........2

        B.     The Company Warned of the Precise Risks That Later Emerged ...........................6

        C.     The Company Had No Duty to Accuse Itself of Regulatory Violations ................6

        D.     Plaintiff Fails to Plead That Any Statement Was False or Misleading...................7

II.     PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER ...............9

III.    PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION..................................................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*In re Axis Capital Holdings Ltd., Securities Litigation*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)..................................................................................7

*In re Barrick Gold Corporation Securities Litigation*,
    341 F. Supp. 3d 358 (S.D.N.Y. 2018)............................................................................9, 10

*Cheng v. Canada Goose Holdings Inc.*,
    No. 19-CV-8204 (VSB), 2021 WL 3077469 (S.D.N.Y. July 19, 2021).............................9

*City of Rockton Retirement System v. Avon Products, Inc.*,
    No. 11 Civ. 4665(PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ...........................7

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005)..........................7

*In re FBR Inc. Securities Litigation*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008).................................................................................2

*Gauquie v. Albany Molecular Research, Inc.*,
    No. 14 CV 6637(FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016).....................9

*In re Hi-Crush Partners L.P. Securities Litigation*,
    No. 12 Civ. 8557(CM), 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013)................................9

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)...............................................................................................2

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
    Scotland Group, PLC*,
    783 F.3d 383 (2d Cir. 2015)................................................................................................7

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)................................................................................................9

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005).............................................................................................10

*Lopez v. CTPartners Executive Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)...................................................................................5

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
    289 F. Supp. 2d 416 (S.D.N.Y. 2003)...............................................................................10

*In re Neurotrope, Inc. Securities Litigation*,
    315 F. Supp. 3d 721 (S.D.N.Y. 2018)............................................................................5, 8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015)................................................................................................9

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ........................................................................................8

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019).........................................................................................7

*Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)......................................................................................9

*In re UBS AG Securities Litigation*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub
    nom. City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)......................................................................................2

Defendant respectfully submits this memorandum of law in further support of its motion to dismiss the Consolidated Class Action Complaint.[1]

## PRELIMINARY STATEMENT

The Opposition confirms the core defect at the heart of the Complaint:  It fails to allege *any* particularized facts showing the Company violated any preexisting Chinese data privacy law or regulation.  All but ignoring the heightened pleading requirements imposed under Rule 9(b) and the PSLRA, Plaintiff instead relies on conclusory assertions and burden-shifting.  He also tries to block the Court from considering documents containing inconvenient facts of which Plaintiff had actual notice and on which he relied upon in drafting the Complaint and thus have become an integral part thereof, as well as facts of which this Court may take judicial notice.[2]

But none of these tactics is a substitute for the particularized facts he is required to plead to state a fraud claim.  Plaintiff ignores the plain text of Chinese regulations cited in his Complaint, which makes clear that the Company's obligations under preexisting rules were not clarified until the enactment of the May 1 Provisions.  Hence, *none* of the regulatory events he cites establishes a violation of preexisting law.  As a result, Plaintiff cannot show that the statements he challenges were false; that Defendants had any duty to disclose further information or, indeed, what more they could have said; that Defendants knew or should have known about the alleged "scheme"; or that the Company's alleged misrepresentations contributed to or caused Plaintiff's loss.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendant's Motion to Dismiss ("Opening Brief" or "Br."). "Opposition" or "Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss.  "Motion to Strike" or "MTS" refers to Plaintiff's Memorandum of Law in Support of Lead Plaintiff's Motion to Strike Certain Exhibits.  All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

[2] As shown in Defendant's Opposition to the Motion to Strike, the Court should deny Plaintiff's attempt to exclude such Exhibits.  (ECF No. 64.)  In any event, as shown below and in the Opening Brief, the Complaint and the documents it cites provide sufficient basis for dismissal.

## ARGUMENT

**I.    PLAINTIFF FAILS TO ALLEGE ANY MATERIAL MISREPRESENTATION**

### A.    Plaintiff Fails to Plead the Company Violated Any Preexisting Chinese Law

Despite Plaintiff's mantra that the Company violated Chinese data privacy laws "throughout the Class Period," (Opp. at 7, 12, 14), the Opposition does not dispute that he alleges no facts establishing *when* the alleged "scheme" began—a fatal deficiency given that, as noted in the Opening Brief, the regulatory events Plaintiff cites in support of the alleged scheme did not transpire until *a year after the start of the Class Period*. (Br. at 16–17.) Nor does he allege *who* was involved in the "scheme," *what* conduct they engaged in, or *how* such conduct constituted a violation of law. (*Id.*) These particularized facts are necessary to state his claim of fraud. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 354 (S.D.N.Y. 2008) (dismissing complaint that "does not specify what defendants did, who they did it with, or how what defendants did constituted the alleged violation"). Rather than confronting these deficiencies head on, "Plaintiff has conceded the point by silence," which alone is fatal to his claim. *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *21 n.19 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

Moreover, Plaintiff ignores that his own sources do not support his claim that the April 29 Meeting served as a "warning" to the Company about its so-called "data privacy violations." (Opp. at 12 n.4; Br. at 17–18). *See also UBS*, 2012 WL 4471265, at *21 n.19; *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."). Plaintiff does not dispute that after the April 29 Meeting, regulators did not identify *any* data privacy violations. (Br. at 9–10.) Instead, regulators merely asked companies to "standardize the collection and use of personal information." (AC ¶ 89.) Although Plaintiff asserts that "a demand for rectification was

2

specifically identified by Chinese regulators as a sanction for violating the Cyber Security Law," (Opp. at 12 n.4), the Opposition does not argue—and the Complaint does not allege—that rectification is imposed *only* for violations of law.[3]  Plaintiff alleges no facts—much less the requisite particularized facts—showing the regulator's standardization request was prompted by violations as opposed to a desire to make oversight easier, a preference for stricter compliance or a host of other reasons.  Plaintiff's speculation also is contradicted by the May 10 Bulletin, which shows that Chinese regulators were fully capable of calling out "violations" explicitly when violations were found.  **(**Ex. N at 1 (alleging several apps, including 360 Jietiao, "violat[ed]" the *just-issued* May 1 Provisions).)  In contrast, regulators said nothing about any "violation" by the Company at the April 29 Meeting.

Plaintiff's assertion that the May 10 Bulletin shows that the Company "violated numerous Chinese data privacy regulations in effect since as early as 2011" fares no better.  (Opp. at 12.) Once again, Plaintiff ignores that the May 1 Provisions—which went into effect just *nine days before*—was the *only law* 360 Jietiao was accused of violating.  (Br. at 18; Ex. N at 3.)  With respect to the other violations identified in the May 10 Bulletin—including the principles of necessity and user consent (Ex. N at 1)—those too were covered by the May 1 Provisions, as the Opening Brief demonstrated.  (Br. at 4–8.)[4]  The May 10 Bulletin's identification of certain areas

---

[3]  Further highlighting the flaws in this claim, the paragraph Plaintiff cites describes punishments that *could* be imposed *by the CAC* during the unrelated January 2019 Crackdown.  (Opp. at 12 n.4; AC ¶ 62.)  Plaintiff does not (and cannot) explain how the 2019 Crackdown—which ended in December 2019 and did not target 360 Jietiao—is at all related to the April 29 Meeting, which occurred over a year later and was not attended by the CAC.  (Ex. F at 1.)

[4]  Regarding the principle of necessity, the May 1 Provisions, for the first time, defined what "necessary personal information" 360 Jietiao was allowed to collect from users.  (Ex. H at Art. 3, Art. 5 cl. 12.)  Contrary to Plaintiff's assertions (Opp. at 12 n.5), the May 1 Provisions, for the first time, required that to obtain user consent, apps "shall not refuse users to use its basic functional services on the ground that users disagree to provide unnecessary personal
*(cont'd)*

where the Company's data practices fell short of the **new regulatory requirements** does not suggest that the Company had previously violated any rules, much less "throughout the Class Period." (Opp. at 12.) It merely reflects the CAC's determination that such practices would **henceforth** be inconsistent with its "additional guidance" specified under the May 1 Provisions (Opp. at 12 n.5).

Plaintiff also has no answer to the inconsistency, noted in the Opening Brief, between his assertion that the Company violated preexisting rules prior to May 1, 2021, and undisputed facts showing the contrary. (Br. at 18–19.) For example, Plaintiff does not allege that the Company was targeted during the 2019 Crackdown that enforced "rules governing the collection of personal information"—the very same rules that Plaintiff claims 360 Jietiao violated "throughout the Class Period" (Opp. at 7; AC ¶ 161; *see* Br. at 7). The only plausible and permissible inference is that the Company was not found to have violated the law at that time. In fact, in June 2020, one month after the start of the Class Period, 360 Jietiao was awarded the **highest level rating in data privacy**. (Ex. A at 60.) Plaintiff attempts to trivialize this award by characterizing the awarding agency as merely an anti-"computer viruses" agency, but Plaintiff ignores that this was **the same agency that led the 2019 Crackdown** and the award was given in recognition of the Company's "app privacy and data security" practices (*id.*)—the same practices that Plaintiff claims violated Chinese law at that time. (Opp. at 2.)

With respect to the July 8, 2021 temporary removal of the 360 Jietiao app, Plaintiff points to two unnamed sources quoted in news articles. Instead of grappling with the deficiencies in his

---

information." (Ex. H at Art. 4.) And contrary to the Motion to Strike, Defendant does not rely on Exhibit E to show the ambiguity of the Cybersecurity Law or any data privacy rule. (MTS at 4.) Such ambiguity is evident on the face of such rules, which are cited in the Complaint. (*See* Br. at 4–8.)

sources (Br. at 19–20), the Opposition misstates the law and argues that, because these sources had been quoted in news articles, he is ***not*** required to describe them with particularity (Opp. at 13 n.6). But the law is clear that "a plaintiff is permitted to rely on newspaper articles" ***only*** "provided that the reports themselves 'indicate particularized facts . . . in order to support Plaintiffs' claims.'" *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 31 (S.D.N.Y. 2016). This requires particularized facts that "support the probability that a person in the position occupied by the source would possess the information alleged." *In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 736 (S.D.N.Y. 2018). Because Plaintiff has failed to allege the predicate facts needed to establish the reliability and knowledge of his anonymous sources, his allegations attributed to unnamed sources are entitled to no weight.

Plaintiff also ignores the Company's own disclosures that the reason for the temporary removal was that a product engineer "missed" a functional update "required by the regulators"—***not*** because the Company violated the law.[5] (Ex. I at 5.) Indeed, Plaintiff's ***own sources*** are in accord with the Company's explanations and contradict the Complaint's allegations. (*See* Ex. X at 2 ("[T]he 360 Jietiao app ***may not have been removed for information protection reasons***." (emphasis added)); Ex. Y at 1 ("Due to the negligence of our staff, we missed a certain step of the rectification within the prescribed time and were asked to be removed from some app stores").)[6]

---

[5] As explained in Defendant's Opposition to the Motion to Strike, Plaintiff does not offer Exhibit I for the truth of its contents, but to highlight Plaintiff's failure to plead particularized facts showing the falsity of the Company's statements. (ECF No. 64 at 8.)

[6] Liz Kiesche, *360 DigiTech Says App Is Temporarily Removed from Android App Store*, Seeking Alpha, https://seekingalpha.com/news/3714010-360-digitech-says-app-is-temporarily-removed-from-android-app-store ("The ***company's staff*** failed to rectify . . .within the specified time . . . ." (emphasis added)).

**B.      The Company Warned of the Precise Risks That Later Emerged**

As demonstrated in the Opening Brief, the Company's robust risk disclosures warned of the precise regulatory events that later materialized.  (Br. at 14–15.)  The Opposition contends that these "boilerplate warning[s]" were insufficient in light of the Company's "repeated guarantees that the Company was operating in compliance with all Chinese data privacy laws," and "failed to adequately warn about the current fact that Defendants knew" the Company was violating such laws.  (Opp. at 15.)  The latter claim fails for the reasons set forth above, *i.e.*, Plaintiff alleges no facts showing that the Company violated any preexisting data privacy laws or regulations during the Class Period, let alone that any Defendant knew of such facts.  (*Supra* § I.A.)

Moreover, both arguments fail because Plaintiff ignores the plain language of the disclosures, which state that (i) existing regulations "may be interpreted and applied in a manner ***inconsistent with our <u>current</u> policies and practices***"; (ii) "***[w]e cannot assure you that our <u>existing</u> user information protection system and technical measures will be considered sufficient*** under applicable laws and regulations"; and (iii) "we may not be aware of our violation of these policies and rules until sometime after the violation."  (Ex. A at 23, 33; Ex. B at 21, 31 (emphasis added).)  These warnings of the possibility of ***ongoing*** non-compliance based on its ***current*** practices plainly do not, as Plaintiff alleges, "guarantee[]" compliance or warn only of "future risks."  (Opp. at 15.)

**C.      The Company Had No Duty to Accuse Itself of Regulatory Violations**

Unable to deny Defendant had no duty to accuse itself of regulatory violations, (Br. at 15–16), the Opposition claims "Defendants had a duty to disclose the actual source of their business success, because they chose to tout the Company's compliance to the market."  (Opp. at 17.)  But the Complaint ***never*** alleged such a theory, nor can Plaintiff cite any paragraph that does.  (*Id.*)  The Complaint makes clear that the omission theory that underlies Plaintiff's claim is that

6

"throughout the Class Period, 360 DigiTech violated . . . Chinese data privacy regulations." (AC ¶ 107; *see id.* ¶¶ 106–19, 124–29.) "It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005). Plaintiff's belated theory premised on the Company's duty to disclose the actual source of its business success fails.[7]

### D.    Plaintiff Fails to Plead That Any Statement Was False or Misleading

Similarly unavailing is Plaintiff's argument that the Company's statements about compliance were "worded as guarantees" and thus not puffery. (Opp. at 16.) On their face, the challenged statements—that the Company "always adhered to the highest standard in compliance," "consistently held our operations to the highest of compliance standards," and "placed the u[t]most importance on protecting user information" (*id.*)—are "'general statements about . . . compliance'" which constitute "'inactionable puffery.'" *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019).[8]

Plaintiff also cannot establish that any of the challenged statements was false. (Br. at 20.) Plaintiff does not allege the Company *ever* failed to obtain consent prior to its collection or use of

---

[7]    Defendant also had no duty to disclose because (i) Plaintiff fails to show it was "over-collecting customer data without consent," (Opp. at 18; *supra* § I.A); *see In re Axis Capital Holdings Ltd., Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) ("If the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed."); (ii) as shown below, statements that the Company "always adhered to the highest standards in compliance" (Opp. at 17) are inactionable puffery (*infra* § I.D); and (iii) statements "'touting [a company's] competitive advantage'" do not give rise to duty-to-disclose violations where Plaintiff fails to plead scienter. *City of Rockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665(PGG), 2014 WL 4832321, at *17 (S.D.N.Y. Sept. 29, 2014) (*See also infra* § II.)

[8]    *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015), on which Plaintiff relies (Opp. at 16), is not to the contrary. There, in affirming the dismissal of securities fraud claims, the court merely noted that "[s]tatements of corporate optimism may be actionable securities violations if 'they are worded as guarantees or are supported by specific statements of fact.'" *IBEW*, 783 F.3d at 392. Plaintiff alleges no such statements here.

personal data.  Nor does the May 10 Bulletin support such an inference.  At most, Plaintiff's own cited source shows only that, after May 10, 2021, Chinese companies like 360 DigiTech could no longer lawfully deny access to their service offerings to users who declined to consent to the collection of data other than their names, phone numbers, bank card numbers, and identification information.  (AC ¶¶ 18, 67, 162; Ex. H at 1; Art. 5, clause 12.)  This does not suggest, much less plead with particularity, that the Company unlawfully collected data or "over collected" data before May 10, 2021—the crux of Plaintiff's claims.  (AC ¶¶ 4, 20, 75, 107, 189.)  The events surrounding the promulgation of the May 10 Bulletin cannot establish that the Company's statements, virtually all of which were made ***prior to*** May 10, 2021, were false.  (AC ¶¶ 106–19.)

Plaintiff also argues that Defendant Haisheng Wu's statement that "[w]e have consistently held our operations to the highest of compliance standards" and "[t]herefore, we are very confident we can meet any regulatory requirements applied to this industry," (AC ¶ 124), is not an inactionable opinion statement because it "would lead a reasonable investor to believe that the Company was in compliance with all Chinese data privacy regulations" (Opp. at 16 n.7).  But the Second Circuit has made clear that such "'[g]eneral declarations about the importance of acting lawfully' are inactionable puffery" precisely because "[n]o investor would take such statements seriously in assessing a potential investment" as "almost every [company] makes these statements." *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021).  Moreover, at the time this statement was made, investors knew that the rectification process imposed under the May 10 Bulletin was still ongoing, (Br. at 19 n.7), and thus would have understood that his statements were "positive but preliminary." *Neurotrope*, 315 F. Supp. 3d at 732.  Finally, Plaintiff does not allege that Defendant Haisheng Wu did not sincerely believe in the truth of his statement at the time that it was made.  Thus, even if his statement turned

out to be wrong—which Plaintiff does not allege—it still would not be actionable. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (mere fact that a "belief turned out to be wrong" does not constitute a securities violation).

## II.    PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

Because Plaintiff does not plead motive (Br. at 23), he "must produce a stronger inference of recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001). However, given Plaintiff's failure to allege a "a clear duty to disclose, plaintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior or recklessness." *Id.* at 144. (*See supra* § I.C.)

Moreover, Plaintiff's cases confirm that to establish recklessness, "Second Circuit cases uniformly rely on allegations that [1] specific contradictory information was available to the defendants [2] at the same time they made their misleading statements." *Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2021 WL 3077469, at *11 (S.D.N.Y. July 19, 2021) (cited in Opp. at 20 n.9). This requires that Plaintiff "specifically identify the reports or statements containing this information." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). As shown in the Opening Brief, Plaintiff fails to do so with respect to *any* of his theories of recklessness.[9] (Br. at 23.) Plaintiff's repeated insistence that

---

[9] Similarly, Plaintiff's cases confirm that "the 'core operations' doctrine contributes little to the scienter analysis" where "plaintiffs do not identify what *specific facts* . . . would have . . . contradict[ed] [defendant's] statement." *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 373–74 (S.D.N.Y. 2018). Plaintiff's cases also confirm that "scienter can be established when Defendants publicly discuss an issue in great detail" (Opp. at 21) *only* when supported by similarly specific allegations. *See, e.g.*, *Gauquie v. Albany Molecular Research, Inc.*, No. 14 CV 6637(FB) (SMG), 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) ("confidential witness . . . detail[ed] [defendant's] awareness of . . . problem prior to . . . misstatements"); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557(CM), 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013) (defendant "tout[ed] [its] relationship with [customer] . . . with knowledge that this key customer had repudiated its contract"). The "generally known" fact of "heightened regulatory scrutiny" is by no means a *specific* contrary fact. (Opp. at 20–21.)

scienter allegations must be considered "holistically" is of no help to him here since "individually insufficient allegations do not combine to create an inference of scienter sufficient to satisfy the PSLRA," as Plaintiff's own cases confirm. *Barrick*, 341 F. Supp. 3d at 374 (cited in Opp. at 20 n.9).

## III.    PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION

Although Plaintiff need not "conclusively rule out the role of potentially intervening events," (Opp. at 23), the Supreme Court has made clear that "a plaintiff's claim fails when 'it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005).  Plaintiff's failure to establish the contemporaneous falsity of any challenged statement makes clear that his loss is not attributable to ***any*** alleged misstatement, but ***only*** to the intervening regulatory events that were unforeseeable by Defendants and investors alike.  (*Supra* § I; *see also* ECF No. 64 at 6 n.4 (market-wide events are subject to judicial notice) (citing *In re Merrill Lynch & Co., Inc. Research Reps. Sec. Litig.*, 289 F. Supp. 2d 416, 419 (S.D.N.Y. 2003)).)

## CONCLUSION

For the reasons above and in the Opening Brief, the Complaint should be dismissed with prejudice in its entirety.[10]

---

[10]    As Plaintiff fails to state a Section 10(b) claim, his Section 20(a) claim fails.  (Br. at 25 n.12.)

Dated: New York, New York
       May 31, 2022

Respectfully submitted,


/s/ Robert A. Fumerton
Scott D. Musoff
(scott.musoff@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
Michael C. Griffin
(michael.griffin@skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Defendant 360 DigiTech, Inc.*